ALTENBERND, Acting Chief Judge.
S.B. appeals the dismissal with prejudice of his paternity action against D.H. and H.H., a married couple. We affirm.
D.H. and H.H. have had a complex marriage. Their first marriage ended in divorce in 1992. They soon reconciled, perhaps because the couple already had several other children, and remarried in Mexico in 1993. They separated again in June 1995, but did not divorce. They reconciled yet again in May 1997. In the interim, D.H. conceived another child around May 1, 1996, who was born in January 1997. When the child was born, S.B.’s name was somehow placed on the birth certificate as father.[1]
S.B. commenced this action for paternity in March 1997, maintaining that he is the biological father of this child and alleging that he was unaware D.H. was a married woman. He requested shared parental responsibility and visitation, and acknowledged a willingness to provide support for the child. D.H. and H.H. filed a joint response to the petition, requesting dismissal of the action based upon their marriage. They maintain that S.B. knew D.H. was a married woman. The trial court referred this case to the general master.
At the hearing on the couple’s motion to dismiss, the general master refused to con *767 duct an inquiry into the best interests of the child. See G.F.C. v. S.G. & D.G., 686 So.2d 1382 (Fla. 5th DCA 1997). The parties stipulated that D.H. was, in fact, married to H.H. at the time of the child’s conception and birth. The general master did not consider relevant S.B.’s knowledge or ignorance of the couple’s marriage at the time of the child’s conception. The general master recommended dismissal of the petition based upon the fact that D.H. and H.H. were a married couple who objected to the action. He also recommended that the husband’s name be placed upon the birth certifícate to confirm his status as the legal father responsible for all future paternal obligations. The trial court entered a judgment accepting these recommendations.
As a matter of law, the initial placement of S.B.’s name on the birth certificate was error. Section 382.013(6)(a), Florida Statutes (1995) provides: “If the mother is married at the time of birth, the name of her husband shall be entered on the certificate as the father of the child unless paternity has been determined otherwise by a court of competent jurisdiction.” Thus, the initial “legal father” of any child of a married woman must be the husband unless a paternity action is resolved prior to the child’s birth. See Department of Health & Rehabilitative Servs. v. Privette, 617 So.2d 305 (Fla.1993). This statute recognizes the time-honored presumption of legitimacy. See, e.g., Eldridge v. Eldridge, 153 Fla. 873, 16 So.2d 163 (1944). This presumption is so strong it “can defeat even the claim of a man proven beyond all doubt to be the biological father.” Privette, 617 So.2d at 308.[2]
Under these principles, we hold that S.B., a putative biological father, cannot maintain this paternity action concerning a child conceived by a married woman when both the married woman and her husband object. Cf. I.A. v. H.H., 710 So.2d 162 (Fla. 2d DCA 1998); G.F.C., 686 So.2d 1382.[3] So long as the husband and wife are married and have no pending divorce proceeding, we will not authorize the trial court to conduct any qualitative evaluation of whether the marriage is “intact.” The marital father, by objecting to the paternity action, is estopped from later denying his responsibilities as the child’s legal father. See Wade v. Wade, 536 So.2d 1158 (Fla. 1st DCA 1988).
In a sense, it is refreshing to see a case in which two men of modest means both wish to undertake the responsibilities of fatherhood for a child. Given the difficulties that D.H. and H.H. have overcome, it is possible that their marriage will now be strong. It is also possible it will be fatally flawed. There is no Solomon within our judiciary who can accurately predict who would be the “better” father for this child. D.H. and H.H. have decided to raise this child of their marriage and to accept all rights and responsibilities of parenthood. S.B. has no statutory or constitutional right to intrude into that private decision. See Michael H. v. Gerald D., 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989). Moreover, there is no authority to termi *768 nate H.H.’s parental rights under these circumstances. See § 39.464, Fla. Stat. (1997); Privette, 617 So.2d at 309.
Affirmed.
NORTHCUTT and CASANUEVA, JJ„ Concur.

. This case was referred to a general master for a report and recommendation prior to dismissal. Thus; we have information in the record beyond the pleadings.

. The author of this opinion has suggested that the current case law does not adequately provide a structured framework in which to address the growing number of cases in which adults dispute their rights or obligations to quasi-marital children who are born to married women, but whose biological fathers are not the husbands. See Chris W. Altenbernd, Quasi-Marital Children: The Common Law's Failure in Privette and Daniel Calls for Statutory Reform, 26 Fla. St. U.L.Rev. 219 (1999). This case further demonstrates the shortcomings of our current statutory and common law framework.

. In I.A. and G.F.C., as in this case, a married couple was unified in objecting to the paternity action by the putative biological father. The result may be different where the husband or wife are not unified in their response to such an action. See Van Nostrand v. Olivieri, 427 So.2d 374 (Fla. 2d DCA 1983); Alchin v. Alchin, 667 So.2d 477 (Fla. 2d DCA 1996). Thus, we do not hold that the putative biological father is prohibited from commencing an action such as this. Rather, the action should be dismissed upon the proper objection from both the husband and wife.