906 So.2d 1130 (2005)
Mark S. LANDER, Appellant,
v.
Carolyn L. SMITH, Appellee.
No. 4D04-1547.
District Court of Appeal of Florida, Fourth District.
June 15, 2005.
Rehearing Denied August 11, 2005.
*1131 Lewis Kapner of the Law Offices of Lewis Kapner, P.A., West Palm Beach, and Esther G. Tamburo of Akin, Gump, Strauss, Hauer & Feld, LLP, Washington, DC, for appellant.
Neil Jagolinzer and Jeffrey M. Clyman of Christiansen & Jacknin, West Palm Beach, for appellee.
PER CURIAM.
Mark Lander seeks to establish paternity over a child he fathered with Carolyn Smith while she was married to, but separated from, Adam Meyers. The trial court granted a motion to dismiss and a summary judgment based mainly on Florida's presumption of legitimacy regarding children born during an intact marriage. Lander appeals contending that the presumption of legitimacy should not bar him from establishing paternity under the facts of this case. We agree and reverse.
Lander and Smith were involved in a relationship beginning in September 1999 and continuing through March 2001. In August 2001, Smith married Meyers. In September 2001, Smith and Meyers separated and she moved to Florida while he remained in New York. Smith contacted Lander about a reconciliation, and they resumed their relationship, which continued until December 2002. In June 2002, Lander and Smith engaged in sexual intercourse and conceived a boy. The boy, T.R.S., was born on February 28, 2003. Lander's name was placed on T.R.S.'s birth certificate as his father.
Lander filed suit against Smith, and subsequently filed an Amended Verified Petition to Establish Paternity, Parental Rights and Responsibilities, Including Time-Sharing, Child Support and Other Relief. In it Lander asserts that he provided financial support to Smith prior to T.R.S.'s birth, provided financial support to pay for the expenses of T.R.S.'s birth and his care, paid child support to Smith, and developed a relationship with T.R.S.
Smith filed a motion to dismiss the petition asserting that Lander had no parental rights to a child born during an intact marriage. Meyers filed a verified response objecting to the paternity action. He claimed to have been continuously married to Smith since August 2001 and that no divorce or dissolution of marriage action had been pursued.
The trial court held a hearing on the motion to dismiss and entered a written Order Granting Respondent's Motion to Dismiss. The trial court concluded that "Adam Meyer[s], as the husband of the mother, is indisputably the subject child's legal father,[1]" based on Florida's presumption *1132 of legitimacy. As such, Lander had no standing to seek parental rights to a child born during an intact marriage, which the trial court defined as requiring a marriage and no pending divorce action. The trial court granted the motion to dismiss without prejudice to Lander filing an amended petition.
Lander filed a second amended petition and included additional allegations. Lander claimed that when Smith contacted him about reconciliation in September 2001, she indicated that her marriage to Meyers was over. Lander indicated that he resumed his relationship with Smith in reliance on her representations that she and Meyers were separated and not engaging in sexual intercourse. Lander further alleged that Smith repeatedly told him that she was in the process of obtaining a divorce from Meyers.
Smith filed a motion to dismiss this petition. The trial court entered a written Order Granting and Denying Motion to Dismiss and Bifurcating Case. In denying the motion to dismiss, the trial court vacated the factual findings contained in the first order on dismissal and recognized a factual dispute concerning whether Smith was in the process of divorcing. The trial court, however, reiterated its conclusions regarding intact marriages from the first order and granted the motion to dismiss in all other respects.
Smith then filed an answer and affidavit on the matter of marriage and divorce, asserting that she was continuously married to Meyers since August 2001 and that no divorce or dissolution action had ever been filed. She also filed a motion for summary judgment asserting that no factual dispute existed regarding the status of her marriage to Meyers. The trial court entered a written Final Summary Judgment finding that there was no issue of material fact.
Lander appeals both the dismissal orders and the final summary judgment. Thus, the standard of review applicable to this appeal is de novo. "The standard of review of orders granting motions to dismiss with prejudice is de novo." MEBA Med. & Benefits Plan v. Lago, 867 So.2d 1184, 1186 (Fla. 4th DCA 2004). "In assessing the adequacy of the pleading of a claim, the court must accept the facts alleged therein as true and all inferences that reasonably can be drawn from those facts must be drawn in favor of the pleader." Id. The standard of review applicable to orders on summary judgment is de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 131 (Fla.2000); see also Reeves v. No. Broward Hosp. Dist., 821 So.2d 319, 321 (Fla. 4th DCA 2002). "Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." Aberdeen, 760 So.2d at 131. Furthermore, "[a]ll doubts and inferences must be resolved against the moving party, and if there is the slightest doubt or conflict in the evidence, then summary judgment is not available." Reeves, 821 So.2d at 321.
"Once children are born legitimate, they have a right to maintain that *1133 status both factually and legally if doing so is in their best interests. Art. I, § 9, Fla. Const. The child's legally recognized father likewise has an unmistakable interest in maintaining the relationship with his child unimpugned." Dep't of Health & Rehabilitative Servs. v. Privette, 617 So.2d 305 (Fla.1993)(internal citation omitted). To this end, "there exists a strong presumption of the legitimacy of children." Hill v. Parks, 373 So.2d 376, 376 (Fla. 2d DCA 1979); see also Eldridge v. Eldridge, 153 Fla. 873, 16 So.2d 163, 163 (1944); Casbar v. Dicanio, 666 So.2d 1028, 1029 (Fla. 4th DCA 1996); Dep't of Revenue v. Cummings, 871 So.2d 1055, 1061 (Fla. 2d DCA 2004), rev. granted, 895 So.2d 405 (Fla.2005). The presumption is, however, rebuttable. Hill, 373 So.2d at 376. Nevertheless, "[c]ourt after court in the United States has held that the presumption and its related policies are so weighty that they can defeat even the claim of a man proven beyond all doubt to be the biological father." Privette, 617 So.2d at 308. In general, the presumption will not be overcome "unless common sense and reason are outraged by applying it to the case at hand." Id. at 309. This means that "there must be a clear and compelling reason based primarily on the child's best interests to overcome the presumption of legitimacy even after the legal father is proven not to be the biological father." Id. (emphasis in original).
As a result of the strong presumption of legitimacy, "[t]he prevailing law in this state, however, is that a putative father has no right to seek to establish paternity of a child who was born into an intact marriage when the married woman and her husband object." Johnson v. Ruby, 771 So.2d 1275, 1275 (Fla. 4th DCA 2000); see also Tijerino v. Estrella, 843 So.2d 984, 985 (Fla. 3d DCA 2003); Bellomo v. Gagliano, 815 So.2d 721, 722 (Fla. 5th DCA 2002)("The court expressly held that section 742.011 does not extend to permit the alleged biological father of a child born of an intact marriage to sue for a determination of paternity."). However, it must be kept in mind that "the presumption of legitimacy is based on the policy of protecting the welfare of the child, i.e., the policy of advancing the best interests of the child. This policy is a guiding principle that must inform every action of the courts in this sensitive legal area." Privette, 617 So.2d at 307.
Lander contends that applying the presumption of legitimacy under the unique circumstances of the case at bar is outrageous to common sense and reason, especially where there are sufficient facts to overcome the presumption: Smith and Meyers were separated, Smith acknowledged Lander as T.R.S.'s father, Lander supported T.R.S., Lander bonded with T.R.S., Smith told Lander that her marriage to Meyers was over, and Meyers was absent as a husband and a father. Furthermore, Lander contends that the non-access rule, one of the few circumstances capable of overcoming the presumption, applies in this case. The non-access rule defeats the presumption by showing that the husband "lacked access to his wife at the time of conception." G.F.C. v. S.G., 686 So.2d 1382, 1384 (Fla. 5th DCA 1997); see also Jones v. Stoutenburgh, 91 So.2d 299, 303 (Fla.1956)(self-incrimination context); In re: Estate of Jerrido, 339 So.2d 237, 239 (Fla. 4th DCA 1976)(heirship context). Lander contends that the sixteen month separation of Meyers and Smith while they were living in separate states (not to mention Smith's representations that she was not engaging in sexual intercourse with Meyers during this time period) establish non-access so as to overcome the presumption of legitimacy. Finally, Lander contends that the trial court erred by not undertaking a best interests analysis.
*1134 Smith responds that this case is straightforward and that Lander's arguments constitute nothing more than an invitation to open a Pandora's Box best left to the legislature and travel down a slippery slope toward invasion of marital privacy. Smith emphasizes that the presumption of legitimacy is paramount and can defeat the claims of paternity even of biological fathers, where, as here, there is no factual dispute that Smith and Meyers were married throughout the relevant time period and that they object to Lander's petition. Furthermore, where it has been established that an intact marriage is defined as the existence of a marriage without the pendency of divorce proceedings, and that a qualitative analysis of the marriage is not to be undertaken, it would be to travel down a slippery slope to entertain Lander's assertion that separation matters, because there is no telling where the inquiry into the innermost intimacies of a marriage would stop if such an analysis could be undertaken. See S.B. v. D.H., 736 So.2d 766, 767 (Fla. 2d DCA 1999)("So long as the husband and wife are married and have no pending divorce proceeding, we will not authorize the trial court to conduct any qualitative evaluation of whether the marriage is `intact.'"). Additionally, Smith points out factual weaknesses of Lander's petition and evidence that should preclude his action even in the event that it is cognizable, mainly that Lander included no allegations of lack of access to support the application of the non-access rule and provided no evidence that a relationship between Meyers and T.R.S. will not be in T.R.S.'s best interests.
This case rests at the intersection of paternity and legitimacy where there exists a natural tension between reason and emotion, law and social consciousness, and the presumption of legitimacy and the best interests of a child in a modern world characterized by family structures of endless varieties and mores in constant flux. We are mindful of the presumption of legitimacy and the importance that it serves for children who would otherwise face uncertainty in their family lives. T.R.S. is not one of these children. For T.R.S. it cannot be said that strictly applying the presumption of legitimacy is irrefutably in his best interests where it is uncontested that Lander is his biological father and where Lander is willing to assume that role in T.R.S.'s life. This is especially so in light of the lack of evidence that Meyers has played any paternal role in T.R.S.'s life. For T.R.S. it is likely that strict adherence to the presumption of legitimacy could operate to thrust upon him the very uncertainty that it is intended to avoid.
As such, we conclude that this is a circumstance in which "common sense and reason are outraged" by rigidly applying the presumption of legitimacy to bar Lander's paternity action. This is for several reasons. It must be recognized that "paternity and legitimacy are related, but nevertheless separate and distinct concepts." Daniel v. Daniel, 695 So.2d 1253, 1254 (Fla.1997). Daniel is further instructive on this point due to factual similarities with the case at bar. The final judgment of dissolution of Michael and Tara Daniels' marriage required Michael to pay child support for a girl born during his marriage to Tara but stipulated to be the biological child of another man. Id. at 1254. The Second District reversed the child support award, concluding that:
(1) a husband, like Michael Daniel, who is not the natural or adoptive parent of a child, and has not otherwise contracted for the child's care and support, has no duty to pay child support upon the dissolution of the marriage; and (2) even though the former husband in this case has no duty to pay child support, the child nevertheless remains "legitimate" *1135 because she was born during the parties' valid marriage.
Id.
This holding has two implications in the present case. First, that the presumption of legitimacy need not be strictly applied here, because even if Lander's paternity were established, T.R.S. would not become illegitimate because he was born during the marriage of Smith and Meyers. Second, if a legal father is not required in all circumstances to fulfill the responsibilities attendant to fatherhood, such as supporting a child, where that child is not biologically his, that legal father should not necessarily be able to benefit from the rights attendant to fatherhood either (although, here, unlike in Daniel, the legal father objects to paternity proceedings). This is especially the case where the biological father is willing to embrace both those responsibilities and rights. To rigidly apply the presumption of legitimacy in this case could well create a scenario where T.R.S. is legitimate but is left without a relationship with either his legal father or biological father; on the contrary, relaxing the presumption of legitimacy in this case could well result in a scenario where T.R.S. is both legitimate and involved in a nurturing and supportive relationship with his biological father.
Based on this reasoning, and our narrow holding that the presumption of legitimacy does not bar a paternity action under the factual circumstances presented, we reverse the trial court's orders of dismissal and the final summary judgment and remand for further proceedings during which Lander can seek to establish paternity and present evidence supporting his claims. The best interests of T.R.S. should also be considered at this hearing, because those interests are the polestar which must guide judicial consideration of this case.
In sum, we reverse because to do otherwise would outrage both common sense and reason and place the welfare of a child at risk without a full consideration of that child's best interests. This we cannot condone simply in the name of rigid adherence to the presumption of legitimacy.
Reversed and Remanded.
GUNTHER, POLEN and HAZOURI, JJ., concur.
NOTES
[1] The husband of the mother is considered the child's legal father. See Johnson v. Ruby, 771 So.2d 1275, 1276 (Fla. 4th DCA 2000). Cases alternatively refer to the legal father as the father whose name appears on the child's birth certificate because Florida Statutes section 382.013(2)(a) requires that the name of the husband be placed on the birth certificate. See Dep't of Health and Rehabilitative Servs. v. Privette, 617 So.2d 305, 307 (Fla.1993); Gilbertson v. Boggs, 743 So.2d 123, 127 (Fla. 4th DCA 1999)("The `legal father' is the man to whom the mother was married when the child was born and whose name appears on the birth certificate."). Meyers will be referred to as the legal father in this opinion because he was Smith's husband at the time of T.R.S.'s birth, although Lander's name was placed on the birth certificate in contravention of section 382.013(2)(a).