ON MOTION FOR REHEARING

GROSS, J.
We grant the motion for rehearing, withdraw our previous panel opinion, and substitute the following.
There are three actors in this case — the husband (Jeremy Lohman), the wife (Angela Maria Lohman), and Thomas Car-nahan.
The husband filed a petition for dissolution of marriage. In it, he alleged that the couple married in 1999, had two minor children, and separated in April, 2006, when the wife began living with Carnahan, with whom she had engaged in a long-term affair. The petition also alleged that the wife was pregnant and that the husband was not the father of the unborn child.
The husband and wife filed notice of a May 30, 2006 settlement agreement, which provided that two children were born to the couple and that no other children were expected. The agreement contemplated joint custody of the two children.
Then, the husband and wife reconciled.
The wife gave birth to a child on September 29, 2006. The husband participated in the pregnancy, was present for the birth, and is named as the child’s father on the birth certificate.
On October 10, 2006, Carnahan filed a petition to determine paternity, naming *987 the wife as the respondent. He alleged that the parties began a sexual relationship in 2005 and conceived a child in January, 2006, while the "wife was living apart from the husband. He claimed that until the relationship ended in May, 2006, he was involved in all aspects of the wife’s pregnancy and supported her- financially and emotionally. Carnahan’s petition requested that the court order paternity testing of the child and designate Carna-han the child’s temporary and permanent residential parent. Later, Carnahan filed an amended petition adding the husband as a respondent.
On October 30, 2006, the couple served a joint voluntary dismissal of their dissolution proceeding.
On December 28, 2006, the husband filed a motion to dismiss and supporting affidavit. By a separate pleading, the wife joined in the motion. The husband argued that Carnahan lacked standing to bring the matter. The husband’s affidavit irrevocably waived any right to contest that he was the baby’s father and asserted his intention to continue to support his wife and three children. He attached a copy of the baby’s birth certificate indicating that he was the father.
The trial court denied the motion to dismiss and required that the husband and wife answer the petition within ten days.
The husband and wife- timely filed a petition for writ of certiorari with this court.
Certiorari lies in this situation. See Bellomo v. Gagliano, 815 So.2d 721 (Fla. 5th DCA 2002).
The general rule is “that a putative father has no right to seek to establish paternity of a child who was born into an intact marriage when the married woman and her husband object.” Johnson v. Ruby, 771 So.2d 1275, 1275-76 (Fla. 4th DCA 2000). In S.B. v. D.H., 736 So.2d 766 (Fla. 2d DCA 1999), the second district extended this holding to “prevent the trial court from evaluating the ‘intactness’ of a marriage so long as no divorce proceeding was pending.” S.D. v. A.G., 764 So.2d 807, 809 (Fla. 2d DCA 2000). The S.B. court reasoned that when a marital father objects to a paternity action, he is “estopped from later denying his responsibilities as the child’s legal father.” 736 So.2d at 767. Where the paternity of a child born to an existing marriage has been so acknowledged and where the husband and wife “have decided to raise [the] child of their marriage and to accept all the rights and responsibilities of parenthood,” a man who may have contributed his DNA to the child “has no statutory or constitutional right to intrude into that 'private decision.” Id.
In the original panel opinion, we seized on dicta from Lander v. Smith, 906 So.2d 1130, 1134 (Fla. 4th DCA 2005) that “an intact marriage is defined as the existence of a marriage without the pendency of divorce proceedings.” Lander cited no authority for this rigid definition other than S.B. v. D.H. That case does not employ such a definition; it holds only that a third party may not question the “intactness” of a marriage unless- there are divorce proceedings pending.
A marriage is intact.or it is not. A state of limbo exists when a divorce proceeding is pending and a marriage is on the road to dissolution. The bonds of matrimony are terminated by either death or a Chapter 61, Florida Statutes (2006), final judgment. See Marlowe v. Brown, 944 So.2d 1036 (Fla. 4th DCA 2006). Under Florida Family Law Rule 12.420(a), the parties may file a voluntary dismissal without prejudice that does “not operate as an *988 adjudication on the merits.” [1] The effect of a voluntary dismissal is “to remove completely from the court’s consideration the power to enter an order, equivalent in all respects to a deprivation of ‘jurisdiction.’ ” Randle-Eastern Ambulance Serv., Inc. v. Vasta, 360 So.2d 68, 69 (Fla.1978). Here, the joint voluntary dismissal left the parties “as if the action had never been brought.” Papa John’s Int’l, Inc. v. Cosentino, 916 So.2d 977, 984 (Fla. 4th DCA 2005) (quoting In re Piper Aircraft Distrib. Sys. Antitrust Litig., 551 F.2d 213, 219 (8th Cir.1977), Attache Resort Motel, Ltd. v. Kaplan, 498 So.2d 501, 503 (Fla. 3d DCA 1986)).
Once the Lohmans dismissed their dissolution action there was no pending divorce proceeding, so the trial court was not authorized “to conduct any qualitative evaluation of whether the marriage [was] ‘intact.’” S.B., 736 So.2d at 767. The Lohmans were in almost the same legal position as the husband and wife in S.B., where a child was conceived and born during a married couple’s separation, but the couple reconciled and objected to the paternity action. The husband is listed as the father on the birth certificate and he has filed an affidavit of paternity of the child. See Bellomo, 815 So.2d at 721. This is not a case where, after the initiation of a paternity action, a previously filed dissolution action continued on its way to a final judgment. Under these circumstances, Carnahan may not invade the Lohmans’s private decisions concerning their marriage. S.B., 736 So.2d at 767; see G.F.C. v. S.G., 686 So.2d 1382, 1385 (Fla. 5th DCA 1997).
We distinguish Lander, which narrowly circumscribed its holding to the facts of that case. 906 So.2d at 1135. There, the mother acknowledged the putative father as the child’s father by having his name placed on the birth certificate and the putative father supported the child and bonded with him after his birth. Id. at 1131— 33. We also distinguish this case from T.B. v. M.M., 945 So.2d 637 (Fla. 2d DCA 2006), where the putative father filed a paternity action and the mother married another man two days after she was served with process; there was no intact marriage at the time the paternity action was filed. Id. at 639.
As Judge Altenbernd has written, these types of eases, involving “quasi-marital children,” are intensely fact sensitive and “difficult, if not impossible, to address within the case law method.” S.D., 764 So.2d at 809. For centuries, the law developed on the assumption that a mother’s parentage was certain, but a father’s connection to a child could be open to doubt. The advent of DNA testing has changed the dynamics in these cases. In the past ten years, the law has struggled to balance the sanctity of marriage, the right of privacy, and the best interest of children against the knowledge of paternity acquired by DNA testing. In construing the existing Florida rule, the panel opinion took too narrow a view of what constituted an “intact marriage.” To paraphrase Justice Jackson, “if there are other ways of gracefully and good naturedly surrendering former views to a better considered position,” we “invoke them all.” McGrath v. Kristensen, 340 U.S. 162, 178, 71 S.Ct. 224, 95 L.Ed. 173 (1950) (Jackson, J., concurring).
*989 The trial court’s order constitutes a departure from the essential requirements of law. We grant the writ of certiorari and quash the trial court’s order denying the motion to dismiss.
POLEN and STEVENSON, JJ., concur.

. One distinction between Rule 12.420(a) and Florida Rule of Civil Procedure 1.420(a)(1) is that a dismissal of an action under the family law rule “shall not operate as an adjudication on the merits”; this is unlike the civil procedure rule that "a notice of dismissal operates as an adjudication on the merits when served by a plaintiff who has once dismissed in any court an action based on or including the same claim.”