PER CURIAM.
J.S., the married husband, and C.L., the married wife, petition for a writ of certio-rari seeking to quash the trial court’s or *1232 der that found that S.M.M., the putative biological father, had standing to pursue a paternity action concerning N.L., a child conceived and born while J.S. and C.L. were married. The trial court’s order included a requirement that N.L. and S.M.M. submit to DNA testing. Because the trial court’s order departs from the essential requirements of the law and results in harm that cannot be corrected on appeal, we grant the petition and quash the order.
J.S. and C.L. were married on September 20, 2005. N.L. was born on September 29, 2008. It is clear from these dates that J.S. and C.L. were married when N.L. was both conceived and born. J.S. was not present for N.L.’s birth because he was stationed out of state with the military, and C.L. refused to name the father at the hospital. Thus, the space for the father’s name on the birth certificate states, “mother refuses information on husband.” Nevertheless, the birth and N.L.’s neonatal treatment were paid for through military health insurance benefits available through J.S.’s active duty military status. Moreover, pursuant to section 882.013(2)(a), Florida Statutes (2008), J.S. is the “legal father” of N.L. Through this statute, the legislature has codified the public policy in Florida that the “legal father” of any child born of a married woman must be that woman’s husband unless a paternity action has been resolved prior to the child’s birth.
On May 27, 2009, J.S. filed a petition for dissolution of marriage from C.L. In that petition, he denied that any children were born of the marriage. However, J.S. subsequently dismissed the dissolution petition on November 27, 2009. J.S. and C.L. are still married, and no dissolution proceedings are currently pending.
During the seven months that the dissolution petition was pending, S.M.M. filed a paternity action, seeking to establish his paternity of N.L. and to establish visitation, child support, and the division of other expenses. Both J.S. and C.L. opposed this petition and moved to dismiss it for lack of standing. Purportedly in compliance with the supreme court’s opinion in Kendrick v. Everheart, 390 So.2d 53, 60-61 (Fla.1980), the trial court held an eviden-tiary hearing concerning whether S.M.M. had standing to pursue the paternity action. After considering the evidence presented, the trial court found that S.M.M. had standing, and it permitted the paternity action to proceed and ordered N.L. and S.M.M. to undergo DNA testing. J.S. and C.L. now ask this court to quash this order.
Review by certiorari is appropriate when an order departs from the essential requirements of the law and causes harm that cannot be remedied on direct appeal. See Dep’t of Revenue ex rel. T.E.P. v. Price, 958 So.2d 1045, 1046 (Fla. 2d DCA 2007); see also Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla.1995); Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1099 (Fla.1987). In this case, S.M.M. contends that this petition should be dismissed because J.S. and C.L. cannot establish irreparable harm. However, this court has held that an erroneous order for genetic testing “cannot be corrected through a direct appeal, for the improper genetic testing requiring a blood draw would have already been completed” and thus any error in the order “must be corrected through certiorari proceedings.” Price, 958 So.2d at 1046; see also State, Dep’t of Revenue ex rel. Sharif v. Brown, 980 So.2d 590, 590 (Fla. 1st DCA 2008) (holding that a potentially erroneous order requiring a mother and child to submit to genetic testing for a determination of paternity “threatens what we have held to be irreparable harm that cannot be cured on plenary appeal”); Dep’t of Revenue v. *1233 Long, 937 So.2d 1235, 1237 (Fla. 1st DCA 2006) (holding that the fact of subjecting the child “to a potentially intrusive test ... is enough to constitute irreparable harm”); cf. Lohman v. Carnahan, 963 So.2d 985, 987 (Fla. 4th DCA 2007) (reviewing order denying motion to dismiss paternity action by certiorari). Therefore, the trial court’s order in this case, which denied J.S. and C.L.’s motion to dismiss by finding that S.M.M. had standing and which ordered potentially intrusive DNA testing of N.L., would result in irreparable harm if improper. Accordingly, we have certiorari jurisdiction over this petition.
Turning to the merits, we conclude that the trial court departed from the essential requirements of the law when it determined that S.M.M. had standing to challenge the paternity of N.L. — a child of an intact marriage. In this respect, this case is essentially indistinguishable from S.B. v. D.H., 736 So.2d 766 (Fla. 2d DCA 1999). In that case, the mother and father had a tumultuous relationship. They had married, divorced, remarried, separated, and reconciled. Id. at 766. During the parties’ separation, the mother conceived a child. Id. There was no dispute that this child was both conceived and born while the parties were married. Id. Nevertheless, S.B., the putative biological father, filed a paternity action seeking shared parental responsibility and visitation. Id. The trial court dismissed the petition, and S.B. appealed.
This court first noted that H.H., the married husband, was the “legal father” by virtue of the fact that he was married to the mother when the child was born. Id. at 767. We noted that the statutory provision making H.H. the “legal father” “recognizes the time-honored presumption of legitimacy.” Id. We also noted that “[tjhis presumption is so strong it ‘can defeat even the claim of a man proven beyond all doubt to be the biological father.’” Id. (quoting Dep’t of Health & Rehabilitative Servs. v. Privette, 617 So.2d 305, 308 (Fla.1993)). Because of the strength of this statutory presumption, this court held that “a putative biological father [] cannot maintain [a] paternity action concerning a child conceived by a married woman when both the married woman and her husband object.” Id.; see also I.A. v. H.H., 710 So.2d 162, 164 (Fla. 2d DCA 1998); Lohman, 963 So.2d at 987. Further, “[s]o long as the husband and wife are married and have no pending divorce proceeding, we will not authorize the trial court to conduct any qualitative evaluation of whether the marriage is ‘intact.’” S.B., 736 So.2d at 767; see also S.D. v. A.G., 764 So.2d 807, 809 (Fla. 2d DCA 2000). Thus, because D.H. and H.H. were married when the child was conceived and born and because they were unified in their opposition to S.B.’s petition to establish paternity, this court agreed with the trial court that S.B. had no standing to challenge the child’s paternity, and we affirmed the dismissal.
The facts in this case are legally indistinguishable. There is no question, and no dispute, that J.S. and C.L. were married when N.L. was conceived and born. While there was a dissolution case pending at one point, that case has been dismissed, and J.S. and C.L. are unified in their opposition to S.M.M.’s petition to establish paternity. Therefore, pursuant to the plain, unambiguous, and controlling holdings of S.B., S.D., I.A., and Lohman, S.M.M. had no standing to pursue this paternity action, and the trial court departed from the essential requirements of the law in finding otherwise.
In addition, the cases relied upon by S.M.M. are all distinguishable in legally relevant ways. In Kendrick, three of the five children were born when the husband *1234 and wife were not married. 390 So.2d at 55. And in L.J. v. A.S., 25 So.3d 1284 (Fla. 2d DCA 2010), and Nevitt v. Bonomo, 53 So.3d 1078 (Fla. 1st DCA 2010), the husband and wife were divorced before the children at issue were born. Thus, none of those three cases dealt with legally legitimate children who were conceived and bom during the marriages, as is the case here. Further, in Van Nostrand v. Olivieri, 427 So.2d 374, 375 (Fla. 2d DCA 1983), the husband and wife were not unified in their opposition to the paternity action, with the wife actually seeking to have her current husband declared the legal father in place of her former husband, to whom she had been married when the child was conceived and born. See also Fernandez v. McKenney, 776 So.2d 1118, 1120 (Fla. 5th DCA 2001) (allowing paternity action to proceed even though the children were conceived and born during an intact marriage because the mother supported— rather than opposed — the paternity action) (Sharp, J., concurring specially). Here, however, J.S. and C.L. are unified in their opposition to S.M.M.’s petition. Because of these factual differences, none of these cases are controlling, and their discussions concerning how the putative biological father could establish standing to pursue a paternity action are irrelevant to the resolution of this case.
We recognize that the Fourth District reached the opposite result in Lander v. Smith, 906 So.2d 1130 (Fla. 4th DCA 2005). In that case, the child was conceived and born while the husband and wife were separated. Id. at 1131. The mother placed the putative biological father’s name on the birth certificate and accepted support from him for the child. Id. The putative biological father also had a relationship with the child while the husband lived in another state. Id. Despite the fact that the child was conceived and born during an intact marriage and both the husband and wife objected to the paternity petition, the Fourth District allowed the case to proceed, finding that “ ‘common sense and reason are outraged’ by rigidly applying the presumption of legitimacy to bar” the putative biological father’s paternity action. Id. at 1134.
However, the Fourth District specifically limited Lander to its unique facts in Lohman and declined to follow it, instead following the public policy as set forth by the legislature and holding:
Where the paternity of a child born to an existing marriage has been so acknowledged and where the husband and wife “have decided to raise [the] child of their marriage and to accept all the rights and responsibilities of parenthood,” a man who may have contributed his DNA to the child “has no statutory or constitutional right to intrude into that private decision.”
Lohman, 963 So.2d at 987 (quoting S.B., 736 So.2d at 767). Lander has not been cited in any subsequent opinion, other than Lohman which refused to follow it. Thus, it appears that Lander is an outlier that does not, by itself, define the essential requirements of the law or require denial of this certiorari petition.
Finally, S.M.M. argues that J.S. and C.L. waived the issue of whether S.M.M.’s petition was proper when they did not seek review of the initial denial of their motion to dismiss. However, in I.A., this court noted that granting relief to a putative biological father who has no standing to seek such relief constitutes “an error that is of such a fundamental nature that we are duty bound to correct it.” 710 So.2d at 164. While the appendix supplied to this court is not sufficient to establish that any such waiver occurred in this case, *1235 the fundamental error in allowing S.M.M. to proceed with a paternity action under these circumstances would render this court “duty bound to correct it” even if such a waiver had occurred.
Accordingly, because the trial court’s order departs from the essential requirements of the law and results in irreparable harm, we grant the petition, issue the writ, and quash the trial court’s order permitting S.M.M.’s paternity action to proceed. We also certify conflict with Lander.
Petition granted; conflict certified.
WHATLEY, VILLANTI, and WALLACE, JJ., Concur.