GRIFFIN, J.,
concurring specially.
This is a hard case to decide against the appellant, although there is no doubt in my mind that the law compels affirmance. It is the latest of many cases filed in our state courts in which the biological father seeks to establish his paternity to a child born into a marriage between the child’s mother and another man. Indeed, this is the second time Mr. Pena has filed suit in an effort to try to establish his paternity to the child, K.D., who was born to appellee, Sandra Diaz [“Diaz”], when Diaz was married to appellee, Nabor Jaimes Arellande-da [“Jaimes”].
Appellees Diaz and Jaimes were married in December 2007. Sometime later, the two separated, and Diaz began a relationship with Pena. Pena alleges that, in January 2010, Diaz discovered she was pregnant and informed Pena that he was the father of her unborn child. Pena further alleges that he accompanied Diaz to her doctor appointments while she was pregnant, and that he and his mother were present in the delivery room when K.D. was born. The record also indicates that, during Diaz’s pregnancy, Jaimes impregnated another woman.
On June 16, 2010, during Diaz’s pregnancy, Diaz and Jaimes jointly filed a petition for simplified dissolution of marriage, wherein they affirmed under oath that Jaimes was not the father of Diaz’s unborn child. On September 28, 2012, while the dissolution action was pending, Diaz gave birth to K.D. The following day, Pena filed a petition to determine paternity in Marion County. Pena alleges that this action “enraged” Diaz and, as a result, Diaz no longer wanted Pena to have contact with K.D. Pena further alleges that this led Diaz to convince Jaimes to voluntarily dismiss their dissolution action, which they did on October 19, 2010, to preclude Pena from establishing paternity of K.D.
Diaz and Jaimes then moved to dismiss Pena’s paternity action, arguing that K.D. was conceived and born during their marriage, and that their marriage was intact. On November 8, 2011, almost fourteen months after Pena instituted his paternity action, the trial court held a hearing on Diaz and Jaimes’s motion to dismiss. At that time, Diaz and Jaimes were still married and no dissolution action was pending. Finding that K.D. was conceived and born during an intact marriage (because the dissolution action was subsequently dismissed) and that both Diaz and Jaimes were resolute in their objection to Pena’s paternity action, the trial court granted the motion to dismiss. Florida law does not allow a putative biological father a cause of action to establish paternity if the child was born during the mother’s “intact” marriage to another man. Thus, the trial court stated that it was “duty bound to follow precedent of the statutes and the higher courts” to dismiss Pena’s paternity action. For whatever reason, Pena did not appeal this decision.
Five months after the trial court in Marion County found that Diaz and Jaimes’s marriage was “intact,” Diaz instituted dissolution proceedings against Jaimes in Citrus County. Pena discovered that the dissolution action was pending and unsuccessfully sought to intervene to establish paternity of K.D. Simultaneously in Citrus County, Pena filed his second paternity action under section 742.011, *358 which is on appeal here. In his petition, Pena has alleged that K.D. resides with Diaz, and that Pena has not been allowed to see K.D. since October 4, 2010.
Diaz moved to dismiss this second paternity action, arguing that it impugned the legitimacy of K.D. and the parental rights of Jaimes, K.D.’s legal father. Moreover, Diaz argued that res judicata barred this action because the issue of paternity had already been litigated in Pena’s first paternity action in Marion County. The trial court in Citrus County held a hearing on Diaz’s motion to dismiss. Jaimes attended this hearing and asserted his rights as the legal father of K.D. During the hearing, Diaz testified that she and Jaimes were married and living together at the time of KD.’s birth. Diaz also testified that Jaimes pays child support for K.D. every week. Ultimately, the trial court found that K.D. was born into an intact marriage and dismissed the paternity action.
In Department of Health and Rehabilitative Services v. Privette, 617 So.2d 305 (Fla.1993), the Florida Supreme Court sought to reconcile the emergence of biological fatherhood as a scientific fact with the common law presumption of legitimacy. See Chris W. Altenbernd, Quasi-Marital Children: The Common Law’s Failure in Privette mid Daniel Calls for Statutory Reform, 26 Fla. St. U.L.Rev. 219-38 (1999). Throughout its opinion, the Privette court expressed a strong commitment to protecting the legitimacy of children and the interests of legal fathers. See Privette, 617 So.2d at 308. “Nothing in Privette suggests that the supreme court was concerned with the rights of a man purporting to be the biological father.” G.F.C. v. S.G., 686 So.2d 1382, 1384 (Fla. 5th DCA 1997).
After Privette, and other decisions of Florida courts attempting to apply Privette to the myriad of factual situations that arise in these cases, it is now the prevailing law in Florida that a putative father has no right to seek to establish paternity of a child born into an intact marriage when both the mother and her husband object. See Slowinski v. Sweeney, 64 So.3d 128 (Fla. 1st DCA 2011); Bellomo v. Gagliano, 815 So.2d 721 (Fla. 5th DCA 2002); Johnson v. Ruby, 771 So.2d 1275 (Fla. 4th DCA 2000); and G.F.C. v. S.G., 686 So.2d 1382. But see Lander v. Smith, 609 So.2d 1130 (Fla. 4th DCA 2005). Conversely, a putative biological father is not necessarily precluded from bringing a paternity action under section 742.011 when a child is born during the mother’s marriage to another man if the marriage is not “intact.” However, several district courts of appeal have refused to authorize trial courts to conduct any qualitative evalua: tion of the intactness of a marriage “[s]o long as the husband and wife are married and have no pending divorce proceeding.” S.B. v. D.H., 736 So.2d 766 (Fla. 2d DCA 1999); see also J.S. v. S.M.M., 67 So.3d 1231 (Fla. 2d DCA 2011) (holding that, despite the fact that a dissolution action was pending when the paternity action was filed, the trial court departed from the essential requirements of the law by not dismissing the putative biological father’s paternity action because no dissolution action was pending when the child was conceived and born, and the dissolution action had been subsequently voluntarily dismissed).
The Fourth District Court of Appeal has held that a trial court is prohibited from evaluating the intactness of a marriage— even though a dissolution action was pending when the child was born — if the mother and husband later dismiss the dissolution action. Lohman v. Carnahan, 963 So.2d 985 (Fla. 4th DCA 2007). The court in Lohman based this holding on the notion that the joint voluntary dismissal left *359 the parties as if the action had never been brought. Id. at 988. As the court explained, “[o]nce the [mother and husband] dismissed their dissolution action there was no pending divorce proceeding, so the trial court was not authorized to conduct any qualitative evaluation of whether the marriage was intact.” Id. (quotations and citations omitted). The court continued, “This is not a case where, after the initiation of a paternity action, a previously filed dissolution action continued on its way to a final judgment.” Id. Rather, under these circumstances, the putative biological father could not invade the private decisions of the mother and husband concerning their marriage. Id.
The one concept that appears to have remained constant in these cases is the notion that the biological father cannot claim paternal rights to a child born into an “intact” marriage. The courts have also uniformly said that a marriage is not “intact” if there is a pending proceeding to dissolve the marriage when the child is born. This seems to be an obvious conclusion and a sensible rule. Given that a husband and wife have the better part of nine months to consider the status of their marriage and to plan for a child’s birth, the fact that a dissolution of marriage proceeding is actually pending when the child is born seems an appropriate test for assessing the intactness of a marriage. If a dissolution is pending on the date of the child’s birth, the marriage is presumptively not “intact,” and the biological father ought to be able to contest the paternity of the child. What makes no sense to me is the notion that this objective fact — the absence of an intact marriage as evidenced by a divorce pending at the time of the child’s birth — can evaporate by the simple expedient of subsequently dismissing the dissolution of marriage proceeding after the child’s birth. Whatever the motive for dismissing the dissolution — whether a true reconciliation has occurred or whether- it is a ploy to thwart the biological father’s paternity claim — the fact remains that on the date of the child’s birth, the marriage was not intact. Yet, this is what happened in Lohman. To reach this result, the Loh-man court applied federal case law pertaining to the preclusive effect of judgments to reach the conclusion that the dismissal of the dissolution action made it as though the dissolution action never existed. But the dissolution of marriage action did exist at the time of the child’s birth; it is retained in the court records in the jurisdiction where it was filed; and it continues to be a fact even if, as a result of the dismissal, it has no legal effect on the parties’ marriage. Unfortunately, the trial court in Pena’s first paternity action was bound to follow Lohman, in the absence of contrary authority in this district. If Pena’s first paternity action had been appealed, and if I had been assigned to the panel, I would have voted to reverse the judgment. I would have rejected the reasoning in Lohman, and I would have voted to allow Pena to contest for paternity of K.D. because, as a matter of fact, the marriage between Diaz and Jaimes was not intact on the date of the child’s birth.