ALTENBERND, Judge.
T.B. appeals an order dismissing his paternity action, which alleged that he was the father of M.M.’s child. The trial court dismissed the action because M.M. married another man after she was served with the paternity action and the second man acknowledged that he was the father of the child. The second man is not a party to this lawsuit. We reverse because we conclude that neither existing case law nor the provisions in section 742.091, Florida Statutes (2004), compels dismissal of this action.
M.M. had a relationship with T.B. and lived with him for approximately two years. They stopped living together in late October 2002. In December 2002, however, T.B. apparently returned and lived with M.M. until May 2008.
M.M. had a friendship with another man. When she broke up with T.B. in October, she had sexual relations with this second man. Roughly nine months thereafter, in July 2008, she gave birth to a child. The record suggests that neither party has conducted any DNA testing to determine the child’s biological father.
Both men were present in the delivery room when the child was born. Apparently, neither man’s name was placed on the birth certificate at that time. Since M.M. was released from the hospital, she has lived with the second man and he has allegedly supported the child.
On April 13, 2005, T.B. filed a paternity action asking the trial court 'to determine whether he is the biological father of the child. In the complaint, T.B. sought shared parental and primary residential responsibility for the child if he were to be declared the biological father. Although T.B. also sought child support from M.M. based upon his request for primary residency of the child, he clearly understands that he will be legally responsible to support this child if he is declared the biological father but not the primary residential parent.
The action was served on M.M. on April 16, 2005. On April 18, she and the second man obtained a marriage license. They were married at a ceremony on April 25. The second man also signed an acknowledgment of paternity and, presumably based upon that acknowledgment, a birth certificate was issued on April 26 showing the second man as the father of the child.
Based on these events occurring after the filing and service of the paternity action, M.M. filed a “verified” motion to dismiss the complaint. The trial court held a hearing at which the parties testified, despite the trial court’s correct observation that a motion to dismiss is properly decided upon the allegations in the complaint. *639 Thereafter the trial court entered an order dismissing the action with prejudice.
Although the procedure in the trial court was unusual, we do not reverse this order on that basis. For practical purposes, the trial court entered the equivalent of a summary judgment based on the undisputed facts of the marriage and acknowledgment of paternity. Thus, the dis-positive legal issue is whether a paternity action that states a proper claim on the date it is filed and served may be barred if the mother subsequently marries a second man who files an acknowledgment of paternity. We conclude that such defensive steps are not an automatic bar to the paternity action.
There is no question that the law protects the legitimacy of a child bom to an intact marriage. See G.F.C. v. S.G., 686 So.2d 1382, 1385 (Fla. 5th DCA 1997); see also Fla. Dep’t of Revenue v. Cummings, 930 So.2d 604, 607-08 (Fla.2006); S.D. v. A.G., 764 So.2d 807, 809 (Fla. 2d DCA 2000); S.B. v. D.H., 736 So.2d 766, 767 (Fla. 2d DCA 1999). In I.A. v. H.H., 710 So.2d 162 (Fla. 2d DCA 1998), this court extended that protection to a child whose parents were both listed on the child’s birth certificate at the time the child was born and who married two months after the child’s birth. Id. at 164-65. We did so in part based upon the provisions of section 742.091, which reads:
If the mother of any child born out of wedlock and the reputed father shall at any time after its birth intermarry, the child shall in all respects be deemed and held to be the child of the husband and wife, as though born within wedlock, and upon the payment of all costs and attorney fees as determined by the court, the cause shall be dismissed and the bond provided for in s. 742.021 shall be void. The record of the proceedings in such cases shall be sealed against public inspection in the interests of the child.
The undisputed evidence in I.A established that the mother’s husband was the “reputed” and legally recognized father of the child. 710 So.2d at 164-65. In addition, although the petitioner in I.A. alleged that he was the biological father of the child, he did not file an action seeking paternity until the child was three years old.
M.M. argues that this case is controlled by LA. and section 742.091 because the actions following the service of the paternity complaint establish a legal father for the child that prohibits any challenge to the child’s parentage. We disagree. In this case, in light of the fact that both men were present in the delivery room and neither was clearly identified as the legal father of the child upon birth, there was no established “reputed” father. Thus, there was no evidence presented that T.B. neglected his claim of paternity in the face of an obvious competing claim by another man. More important, on the date this action for paternity was filed, there was no marriage, “intact” or otherwise, to prevent the claim. Even if M.M. and the second man had the best of intentions when they married and filed the acknowledgment of paternity in this case, we hesitate to give a mother the right to block a biological father’s right to determine paternity by her marriage to another man during the pen-dency of a paternity action.[1] We decline *640 to further extend I A to include the facts of this case.
We conclude that the provisions of section 742.10(1) are more applicable to these proceedings than those in section 742.091. Section 742.10(1) explains that chapter 742 “provides the primary jurisdiction and procedures for the determination of paternity for children born out of wedlock.” It explains that “[i]f no adjudicatory proceeding was held [to determine paternity], a notarized voluntary acknowledgment of paternity” creates a “rebuttable presumption” of paternity. Thus, M.M. has established nothing more at this stage of the proceedings than a rebuttable presumption that her current husband is the legal father of her child.
Accordingly, we reverse and remand this action for further proceedings. Because the second man is now named on the birth certificate, it would appear that he must be named as a party in the action. If a DNA test establishes the second man’s paternity, this matter will be easy to resolve. If not, it appears that the trial court may be handling a matter of first impression.
Reversed and remanded.
SALCINES and KELLY, JJ., Concur.

. Further, we note that section 742.09 l's language about dismissing the paternity action seems to assume that the reputed father would be the defendant in the paternity action, not an uninvolved third party. This portion of chapter 742 was originally added when it was the "bastardy” chapter and only women were allowed to bring the action. See Ch. 57-267 § 1, Laws of Fla. At that time, then, the reputed father would necessarily *640 have been the defendant in the pending action. Nothing in the amendments to this chapter since 1957 causes us to believe that the legislature has intended to permit a marriage to a third party to become an effective affirmative defense by the mother to a paternity action brought by a putative father.