974 So.2d 436 (2008)
J.W.T., Appellant,
v.
S.T. f/k/a S.G., Appellee.
No. 2D07-339.
District Court of Appeal of Florida, Second District.
December 12, 2007.
Rehearing Denied February 25, 2008.
Charles D. Radeline of Radeline Law Firm, PLC, Palm Harbor, for Appellant.
Mark A. Neumaier, Tampa, for Appellee.
CASANUEVA, Judge.
J.W.T. (the Father) appeals from an or der dismissing with prejudice his petition to establish paternity. In considering Appellee S.T.'s (the. Mother's) motion to dismiss filed in response to the petition, the circuit court looked beyond the allegations of the petition. For this reason, we reverse.
The Father claims that he and the Mother are the parents of a daughter born in November 2001. At the time of the conception and birth of, their daughter, he and the Mother were not married, either to each other or to anyone else. In 2006, the Mother commenced a paternity action against the Father; the Father contends that during those proceedings, she stipulated that he was the father of their daughter. While her action was still pending, she married J.H.T. (the Husband) on September 25, 2006, and soon thereafter voluntarily dismissed her suit.[1] The Father, who wished to acknowledge his pa ternity and be involved in his daughter's life, quickly filed his own petition to establish *437 paternity on October 9, 2006. The Mother moved to dismiss his petition, relying on section 742.091, Florida Statutes (2006),[2] and I.A. v. H.H., 710 So.2d 162 (Fla. 2d DCA 1998). Her motion alleged that she and the Husband are married and that the Husband has acknowledged his paternity by (1) supporting the Mother during and after her pregnancy, (2) signing an affidavit of paternity, (3) having his name placed on the child's birth certificate, and (4) providing financial and emotional support, as well as medical insurance, to the daughter throughout her life. The circuit court accepted the Mother's arguments and dismissed the Father's petition.
We review this case under a de novo standard of review because the circuit court's decision to dismiss a complaint or petition is a question of law. Al-Hakim v. Holder, 787 So.2d 939, 941 (Fla. 2d DCA 2001) ("The de novo standard of review is applied when considering an order granting a motion to dismiss.").
The circuit court had before it the Father's petition which alleged the following relevant facts: (1) he and the Mother had engaged in sexual intercourse with each other that produced this child, (2) he was not married at the time of conception or birth, and (3) he is the putative father of the child, as evidenced by a DNA report, attached to the petition, which showed a level of certainty of 99.98%. These facts state a cause of action to establish paternity.
The transcript of the hearing on the Mother's motion to dismiss shows that the circuit court was well aware of the law of dismissal and what factual matters it could consider. Nevertheless, it felt constrained to dismiss the Father's petition based on section 742.091, Florida Statutes (2006), and this court's opinion in I.A., which held that the putative father has no cause of action if the undisputed evidence establishes that the mother and the reputed father intermarried after the birth of the child. 710 So.2d at 164. The circuit court concluded that the Husband qualified as the child's reputed father because he gave the Mother emotional and financial support during her pregnancy and to both of them after her birth, allowed himself to be identified as the child's father on her birth certificate, and held himself out as the child's father since her birth. These facts, about the Husband's role in the child's life, are outside the allegations of the Father's petition and cannot be a basis to dismiss the suit. See Al-Hakim, 787 So.2d at 941 (noting, similarly to the instant case, that it was evident that the circuit court was attempting to resolve the matter expeditiously and on the merits; further noting, however, that a motion to dismiss is not a substitute for a motion for summary judgment and does not permit the trial court to consider extrinsic evidence).
Although we decide this case purely on its procedural posture and because the circuit court will face further proceedings on remand, we note that under the circumstances of this case, in addition to I.A., the circuit court should also consider the recent case of T.B. v. M.M., 945 So.2d 637 (Fla. 2d DCA 2006). In T.B., this court *438 reversed a circuit court order that had dismissed a paternity action where the mother of the child at issue married another man after she was served with the putative father's paternity action, and her new husband acknowledged that he was the father of the child. We reversed because we concluded that neither existing case law nor the provisions in section 742.091, Florida Statutes (2004),[3] compelled dismissal of the action. Id. at 638.
In T.B., T.B. and another man each had sexual relations with M.M., the unmarried mother of the child, and both men were in the delivery room for the child's birth in July 2003. At the time, neither man's name was placed on the birth certificate. Since the child's birth, M.M. lived with the second man and he allegedly supported the child. On April 13, 2005, T.B. filed a paternity action asking the circuit court to determine whether he was the biological father and, if so, asked that the court order shared parental responsibility for the child and award him primary residential responsibility. T.B. served the action on M.M. on April 16, 2005; on April 18, she and the second man obtained a marriage license and were married April 25. Her new husband also signed an acknowledgment of paternity, and presumably based upon that acknowledgment, a birth certificate was issued on April 26 showing the new husband as the father of the child. Id. at 638.
Based on her new situation, M.M. filed a verified motion to dismiss T.B.'s suit. The circuit court held a hearing at which the parties testified, and despite the circuit court's correct observation that a motion to dismiss is properly decided upon the allegations in the complaint, the court dismissed the action with prejudice. Id. at 639. Although we noted that the procedure employed by the circuit court was unusual, we did not reverse on that basis. In T.B., similarly to this case, the circuit court entered the functional equivalent of a summary judgment based on the undisputed facts of the marriage and the acknowledgment of paternity. We viewed the issue in T.B. as "whether a paternity action that, states a proper claim on the date it is filed and served may be barred if the mother subsequently marries a second man who files an acknowledgment of paternity. We conclude that such defensive steps are not an automatic bar to the paternity action." Id.
Unlike T.B., which did not have a marriage, intact or otherwise, on the date the paternity action was filed, here the Mother and the Husband were a married couple by the time the Father commenced this action, effectively turning the daughter from a nonmarital child into a new type of "quasi-marital child.[4] This factual distinction should not be dispositive under the unique circumstances of this case. The Mother, had previously commenced a paternity action against the Father, in which the Father contends she admitted his paternity, but which action she later voluntarily dismissed, after marrying the Husband. The Father soon thereafter commenced his own paternity action. Although the mother and her new husband in T.B. may have had the best of intentions when they married and filed the acknowledgment of paternity, "we hesitate[d] to give a mother the right to block *439 a biological father's right to determine paternity by her marriage to another man during the pendency of a paternity action." T.B., 945 So.2d at 639. In so doing, we declined to further extend I.A. to include the facts of T.B.'s case. T.B., 945 So.2d at 639-40. Although the Mother and the Husband in this case also may have had the best of intentions for this child when they married, the timing of their actions suggests an attempt to deny the biological father's right to determine paternity, if not during the actual pendency of a paternity action as in T.B., at least during the same timeframe when the parties were disputing paternity.[5]
In summary, and as this court has noted before in the analogous context of "quasi-marital children," these types of cases "present major public policy issues that are difficult, if not impossible, to address within the case law method." Dep't of Revenue ex rel. Preston v. Cummings, 871. So.2d 1055, 1061 (Fla. 2d DCA 2004), approved, 930 So.2d 604 (Fla.2006). As in Preston, we here once again provide a narrow holding that "do[es] not attempt to announce public policy rules broader than those required by the facts in a particular case." Id.
Reversed and remanded for further proceedings.
SALCINES, J., Concurs.
CANADY, J., Concurs specially.
CANADY, Judge, Specially concurring.
I concur with the reversal of the dismissal order and the reasons articulated in the majority opinion for the reversal.
NOTES
[1] Because this is an appeal from the order dismissing an action, the official record is limited. Therefore, many of the facts of this case are taken from elsewhere than the Father's petition, for example from depositions as reported to the court by counsel. We provide the surrounding factual circumstances as the parties have presented them to us to give a more complete picture of the case. However, the disposition of this case remains purely on the basis that the circuit court went beyond the four corners of the petition in dismissing the action.
[2] Section 742.091, Florida Statutes (2006) (Marriage of parents) provides:

If the mother of any child born out of wedlock and the reputed father shall at any time after its birth intermarry, the child shall in all respects be deemed and held to be the child of the husband and wife, as though born within wedlock, and upon the payment of all costs and attorney fees as determined by the court, the cause shall be dismissed and the bond provided for in s. 742.021 shall be void. The record of the proceedings in such cases shall be sealed against public inspection in the interests of the child.
[3] The language of section 742.091 has not changed between 2004 and 2006.
[4] See generally Chris W. Altenbernd, Quasi-Marital Children: The Common Law's Failure in Privette and Daniel Calls for Statutory Reform, 26 Fla. St. U.L. Rev. 219, 228-30 (1999). The child in this case is not quite a "quasi-marital child" because she fits into none of the three types of quasi-marital children outlined by Judge Altenbernd.
[5] Moreover, although the Husband's name appears on the child's birth certificate, the face of the birth certificate shows that it was issued on November 27, 2006, well after the Father instituted his paternity action.