4 So.3d 774 (2009)
A.S., Appellant,
v.
S.F. and A.F., Appellees.
No. 5D08-470.
District Court of Appeal of Florida, Fifth District.
March 13, 2009.
Ingrid Anderson, Clearwater, for Appellant.
A.J. Rohe, III, Thomas Holden and Ashley S. Hunt, of Law Office of A.J. Rohe, III, Tavares, for Appellee A.F.
No Appearance for Appellee S.F.
EVANDER, J.
A.S. (who will also be referred to as "the biological father") appeals from a summary final judgment determining that A.F. was the legal father of M.F ("the child"). For purposes of the summary judgment hearing, A.F. stipulated that A.S. was the child's biological father. Because there remains a disputed factual issue as to whether A.F. was the child's "reputed father" at the time A.F. married the child's mother, we reverse.
On June 29, 2004, S.F. (the mother) gave birth to the child. The mother was not married at the time of the child's birth or at any time during her pregnancy. Prior to the child's birth, the mother had been involved in romantic relationships with both the biological father and A.F. However, at the time of the child's birth, the mother was engaged to A.F. The child's birth certificate (which was filed three days after birth) named A.F. as the father.
Approximately four months after the child's birth, A.F. and the mother were married. For some reason not clear from the record, A.F., the mother and the biological father agreed to have DNA testing conducted prior to the wedding date. Shortly after the wedding date, the parties received the test results relating to A.S. According to the lab report, the DNA testing reflected that A.S. was the child's biological father.
Although the extent of the contact between the biological father and the child is somewhat disputed, the record is clear that the biological father had fairly frequent contact with the child from shortly after the child's birth until sometime in 2007. At that time, the mother stopped contact between the child and the biological father. On August 28, 2007, the biological *775 father filed the instant paternity action.
In her amended answer and counterpetition filed on October 4, 2007, the mother admitted that A.S. was the child's biological father. The mother sought primary residential custody of the child and an order requiring the biological father to pay child support.
One month later, A.F. filed a motion to intervene in the paternity action and a request that the biological father's petition be dismissed. In his motion, A.F. alleged that he was the legal father of the child. One week later, the mother filed a notice of voluntary dismissal of her counterpetition. She subsequently joined in her husband's request to dismiss the paternity action and also obtained leave to file a second amended answer. In her second amended answer, the mother alleged that she was without knowledge as to whether A.S. was the child's biological father. She also raised affirmative defenses of estoppel, laches, and waiver, alleging, inter alia, that A.S. had (1) failed to timely seek a paternity determination; (2) failed to object to A.F. being listed as the father on the child's birth certificate; (3) failed to object to the child taking A.F.'s surname; (4) permitted A.F. to financially support the child since birth; (5) permitted A.F. to hold himself out as the child's legal father; and (6) failed to timely register with the Florida Putative Father Registry. Subsequently, the biological father and A.F. filed cross-motions for summary judgment seeking a determination of the child's legal father. Several affidavits were submitted by the parties for the trial court's consideration.
After making detailed findings of fact, the trial court granted A.F.'s motion. The trial court first recognized the general law that when a child is born into an intact marriage, as recognized by the husband and wife, the husband is deemed to be the legal father and the man claiming to be the child's biological father has no common law, statutory, or constitutional right to sue for paternity. See, e.g., Bellomo v. Gagliano, 815 So.2d 721 (Fla. 5th DCA 2002); G.F.C. v. S.G., 686 So.2d 1382 (Fla. 5th DCA 1997). The court further recognized that through the application of section 742.091, Florida Statutes, the holding set forth in Bellomo and G.F.C. had been extended to the situation where the child had not been born into an intact marriage but the reputed father and the mother had subsequently married. See I.A. v. H.H., 710 So.2d 162 (Fla. 2d DCA 1998).
In I.A., the mother married N.H. two months after the child's birth. The mother had been in a long-term continuous relationship with N.H. prior to the child's conception. Both the mother and N.H. believed that N.H. was the child's biological father. When the child was born, N.H. executed the documents necessary to have himself identified as the father on the birth certificate. Unbeknownst to N.H., the mother had had a brief dalliance with H.H. When the mother learned that she was pregnant, she told H.H. that N.H. was the father. H.H. accepted the mother's word and they went their separate ways. Although H.H. had only seen the child once, he filed a paternity action against the mother three years after the child's birth, alleging that he was the child's father. The Second District Court of Appeal found that H.H. did not have a cause of action. In reaching this conclusion, the I.A. court first stated its agreement with our decision in G.F.C. I.A., 710 So.2d at 164. The court then found that pursuant to section 742.091, the case should be resolved as if the child had been born into an intact marriage. Id. Section 742.091 provides:
If the mother of any child born out of wedlock and the reputed father shall at *776 any time after its birth intermarry, the child shall in all respects be deemed and held to be the child of the husband and wife, as though born within wedlock, ...
(Emphasis added). Because it was undisputed that N.H was the child's reputed father at the time he married the child's mother, the I.A. court concluded that the case was controlled by the holding in G.F.C. I.A., 710 So.2d at 165-66.
While we agree with I.A.'s extension of our holding in G.F.C., we find that I.A. is distinguishable from the instant case because, here, there remains a disputed factual issue as to whether A.F. was the child's reputed father at the time of his marriage to the mother.
Although the term "reputed father" is not defined in Chapter 742, "reputed" has been defined to mean "generally believed; widely believed although not necessarily established as fact." Encarta Dictionary, http://encarta.msn.com/encnet/refpages/ search.aspx?q=reputed. Thus, "reputed father" as used in section 742.091 can be interpreted to mean the individual generally or widely believed or considered to be the biological father of a particular child. Applying that definition to the instant case, the issue is whether the undisputed material facts established, as a matter of law, that A.F. was generally or widely believed or considered to be M.F.'s biological father at the time he married M.F.'s mother.
There were certainly several facts, as found by the trial court, that would strongly support the trial court's determination that A.F. was the child's reputed father: (1) A.F. was listed as the child's father on the birth certificate; (2) the child bears A.F.'s surname; (3) the biological father did not file a paternity action prior to the marriage although he was aware of A.F.'s and the mother's engagement.
However, there was also evidence in the record that would support a finding that A.F. was not the "reputed father" at the time of his marriage. According to the affidavit of A.S. and others, the mother held A.S. out as the father to A.S., family members, co-workers, and other members of the public. Additionally, the fact that the mother requested A.S. participate in paternity testing prior to her marriage arguably supports the biological father's position that A.F. was not the child's reputed father. Furthermore, there are potentially significant facts that have not yet been developed in the record. For example, it is unclear from the record whether, in addition to listing A.F. on the child's birth certificate, the mother and/or A.F. told others that A.F. was the child's father. It is also unclear from the record whether A.F. had received paternity test results excluding him as the child's biological father prior to the date of the marriage. Certainly, if A.F., A.S. and the mother all believed A.S. was the child's biological father and held him out as such, it would be difficult to conclude that A.F. was the reputed father at the time of the marriage even though A.F.'s name had been placed on the child's birth certificate. The fact that A.F. acknowledged paternity of the child and is listed on the birth certificate does not, by itself, necessarily establish A.F. as the reputed father. See, e.g., J.W.T. v. S.T., 974 So.2d 436 (Fla. 2d DCA 2007); T.B. v. M.M., 945 So.2d 637 (Fla. 2d DCA 2006). Accordingly, we reverse the trial court's entry of a summary final judgment and remand for further proceedings.
REVERSED and REMANDED.
MONACO and LAWSON, JJ., concur.