WETHERELL, J.
 

 Appellant, Tommy Nevitt, seeks review of the trial court’s order dismissing his paternity action against Appellees, Nicole and Vince Bonomo. We reverse and remand for further proceedings.
 

 Appellees’ marriage was dissolved through a final judgment entered on February 10, 2010. At the time of the dissolution, Ms. Bonomo was pregnant with Mr. Nevitt’s child. The child was conceived while Appellees were married, but the child was not born until after Appellees’ divorce was final. The record does not reflect when the child was born, but the amended complaint alleged that the child was due on or about April 20, 2010.
 

 On February 11, 2010, Mr. Nevitt filed a complaint pursuant to chapter 742, Florida Statutes (2009), seeking a determination that he was the biological father of the child as well as other relief. The complaint alleged that, at the time of the child’s conception, Appellees were not liv
 
 *1080
 
 ing together and that their marriage was not intact. The complaint also alleged that Mr. Nevitt “has manifested a substantial concern for the welfare of [the] child by keeping in touch with the mother regarding the pregnancy and giving the mother financial help during the pregnancy.” An amended complaint was filed on February 25, 2010, which added an allegation regarding the dissolution of Appellees’ marriage as well as an allegation that Mr. Bonomo had undergone a vasectomy long before the conception of the child making it “biologically impossible” for him to have fathered the child.
 

 On March 25, 2010, in response to Mr. Nevitt’s emergency motion for DNA testing, the trial court entered an order finding that Mr. Nevitt “is the biological father of Ms. Bonomo’s unborn child and shall heretofore be known as the biological father of said unborn child.” The order reflects that this finding was based upon an agreement between Mr. Nevitt and Ms. Bonomo. The order does not reflect that Mr. Bonomo was party to that agreement, but he subsequently admitted in his answer to the amended complaint that Mr. Nevitt is the child’s biological father. Ap-pellees have not contested this order, and the trial court has not vacated the order.
 

 The amended complaint alleged that Ms. Bonomo had initiated adoption proceedings for the child. Mr. Nevitt was opposed to the adoption, and on March 31, 2010, he filed an emergency motion seeking full custody of the child when the child was born and placement of his name on the child’s birth certificate as the father. The trial court denied the motion, but prohibited the child from being placed with the prospective adoptive parents upon birth. The order directed that the child be placed with foster parents or Ms. Bonomo until further order of the court. The record does not reflect the child’s current placement, and Mr. Nevitt represented in his brief that the adoption proceeding was stayed pending resolution of this paternity action.
 

 Appellees’ answer to the amended complaint denied the allegation that Mr. Nevitt had manifested a substantial concern for the child during Ms. Bonomo’s pregnancy. The answer acknowledged the pending adoption proceeding for the child, but stated that Appellees “are ready, willing and able to undertake full 100% responsibility for the child in the event the proposed adoption is disrupted.” The answer also stated that Mr. Bonomo, as the child’s “legal father,” “continues to have interest in the present and future well-being of the child, and this can include the right to make an adoption plan for the child in lieu of parenting the child.”
 

 On May 6, 2010, two weeks after Appel-lees filed their answer to the amended complaint, they served a motion to dismiss the paternity action. The motion argued that Mr. Nevitt lacked standing to contest the paternity of the child because the final judgment dissolving Appellees’ marriage had been set aside and vacated
 
 nunc pro tunc
 
 to February 10, 2010, and, thus, the child was born during Appellees’ marriage. Attached to the motion was a copy of the order setting aside and vacating the final judgment of dissolution.
 
 [1]
 
 The order, which was entered on the same day that the motion to dismiss was served in the paternity action, reflects that Appellees
 
 *1081
 
 consented to setting aside the final judgment and that the judgment was vacated because “it failed to include a child born of the marriage.”
 

 On May 12, 2010, the trial court entered an order granting Appellees’ motion to dismiss. The court reasoned that because the final judgment of dissolution had been set aside and vacated, Appellees had been restored to the status of a married couple and, thus, Mr. Nevitt “has no standing to assert any paternity rights or claim to a child born of the marriage.”
 
 [2]
 
 The trial court denied Mr. Nevitt’s motion for rehearing and thereafter entered a final judgment dismissing the paternity action with prejudice. This timely appeal followed.
 

 This court reviews
 
 de novo
 
 an order of dismissal for lack of standing.
 
 See Roos v. Morrison,
 
 913 So.2d 59, 62 (Fla. 1st DCA 2005) (reviewing ruling on a motion to dismiss
 
 de
 
 novo);
 
 see also Alachua County v. Scharps,
 
 855 So.2d 195, 198 (Fla. 1st DCA 2003) (stating that whether a party has standing is a pure question of law which is reviewed
 
 de
 
 novo). For purposes of ruling on a motion to dismiss, the trial court may look no further than the four corners of the complaint, and all allegations in the complaint must be accepted as true.
 
 Roos,
 
 913 So.2d at 62. A reviewing court operates under the same constraints.
 
 Id.
 

 A child born or conceived during marriage is legitimate, and a person seeking to challenge the child’s paternity must overcome the strong, albeit rebuttable, presumption of legitimacy.
 
 See In re Adoption of Baby James Doe,
 
 572 So.2d 986, 988 (Fla. 1st DCA 1990) (quoting
 
 Knauer v. Barnett,
 
 360 So.2d 399, 403 (Fla.1978));
 
 see also Smith v. Wise,
 
 234 So.2d 145, 146 (Fla. 3d DCA 1970) (“A child conceived in wedlock, but born after termination of the marriage is legitimate.”). The presumption is so strong that it “can defeat the claim of a man proven beyond all doubt to be the biological father.”
 
 Dep’t of Health & Rehabilitative Servs. v. Privette,
 
 617 So.2d 305, 308 (Fla.1993);
 
 see also Dep’t of Revenue v. Cummings,
 
 930 So.2d 604, 607 (Fla.2006) (“The presumption of legitimacy is one of the strongest rebuttable presumptions known to law.”) (internal quotations and citations omitted).
 

 In order to contest the paternity of a child conceived while the mother was married to another man, the putative biological father must allege more than a mere genetic link to the child; he must “show that he has manifested a substantial concern for the welfare of [the] child.”
 
 See Kendrick v. Everheart,
 
 390 So.2d 53, 60 (Fla.1980);
 
 see also L.J. v. A.S.,
 
 25 So.3d 1284, 1286-87 (Fla. 2d DCA 2010) (applying
 
 Kendrick
 
 under circumstances similar to this case);
 
 G.F.C. v. S.G.,
 
 686 So.2d 1382, 1386 (Fla. 5th DCA 1997) (“[I]n order for a man to institute an action for paternity of a child born during a marriage, the man would be required to at least allege that a developed relationship exists between himself and the child; an allegation of a mere biological link to the child would not suffice.”). However, a putative biological father “has no right to seek to establish paternity of a child who was born into an intact marriage when the
 
 *1082
 
 married woman and her husband object.”
 
 Johnson v. Ruby,
 
 771 So.2d 1275, 1275-76 (Fla. 4th DCA 2000);
 
 see also Tijerino v. Estrella,
 
 843 So.2d 984 (Fla. 3d DCA 2003);
 
 S.D. v. AG.,
 
 764 So.2d 807, 809 (Fla. 2d DCA 2000);
 
 S.B. v. D.H.,
 
 736 So.2d 766 (Fla. 2d DCA 1999);
 
 I.A. v. H.H.,
 
 710 So.2d 162 (Fla. 2d DCA 1998);
 
 G.F.C.,
 
 686 So.2d at 1386. An intact marriage has been described as “the existence of a marriage without the pendency of divorce proceedings.”
 
 Lander v. Smith,
 
 906 So.2d 1130, 1134 (Fla. 4th DCA 2005);
 
 see also S.B.,
 
 736 So.2d at 767 (“So long as the husband and wife are married and have no pending divorce proceeding, we will not authorize the trial court to conduct any qualitative evaluation of whether the marriage is ‘intact.’ ”);
 
 but cf. Lohman v. Carnahan,
 
 963 So.2d 985, 988 (Fla. 4th DCA 2007) (characterizing this language in
 
 Lander
 
 as dicta and stating that “[a] marriage is either intact or it is not”),
 
 rev. denied,
 
 981 So.2d 1199 (Fla.2008).
 

 Here, the amended complaint alleged that Mr. Nevitt is the biological father of Ms. Bonomo’s child; that the child was conceived while Ms. Bonomo was married to, but separated from, Mr. Bonomo; that Mr. Nevitt manifested a substantial concern for the welfare of the child by providing support to Ms. Bonomo during the pregnancy; and that the child would not be born into an intact marriage because Appellees had divorced several months before the child was due to be born. These allegations are sufficient to withstand Appellees’ motion to dismiss.
 

 The trial court erred in relying on the nunc
 
 pro tunc
 
 order vacating the final judgment of dissolution in dismissing the amended complaint. The order was extrinsic to the amended complaint and, thus, could not be considered by the trial court in ruling on the motion to dismiss.
 
 See Crews v. Ellis,
 
 531 So.2d 1372, 1376 (Fla. 1st DCA 1988) (“[A] motion to dismiss may not address factual matters not disclosed by the complaint.”);
 
 see also J.W.T. v. S.T.,
 
 974 So.2d 436 (Fla. 2d DCA 2007) (reversing the dismissal of a paternity action where the trial court considered matters outside of the petition).
 

 Moreover, under the circumstances of this case, we cannot agree with the trial court that the
 
 nunc pro tunc
 
 order (or the subsequent dismissal of the dissolution petition by Mr. Bonomo) automatically bars Mr. Nevitt’s paternity action. Even if the order had the effect of legally undoing Appellees’ divorce such that they are now considered to have been married when the paternity action was filed and when the child was born, the divorce proceeding was still pending at those times and the trial court could therefore consider the “intactness” of Appellees’ marriage.
 
 See S.B.,
 
 736 So.2d at 767.
 

 Another factor weighing against the dismissal of the paternity action at this stage of the proceeding is that the trial court entered an order declaring Mr. Nevitt to be the biological father prior to the child’s birth. That order has not been contested or vacated, and Appellees cannot simply make the finding of Mr. Nevitt’s paternity go away by having their divorce decree vacated and then voluntarily dismissing the dissolution proceeding.
 
 See T.B. v. M.M.,
 
 945 So.2d 637 (Fla. 2d DCA 2006) (reversing the dismissal of a paternity action that was served on the mother after the child’s birth but before she married her husband);
 
 and cf.
 
 § 382.013(2)(a), Fla. Stat. (“If the mother is married at the time of birth, the name of the husband shall be entered on the birth certificate as the father of the child,
 
 unless paternity has been determined otherwise by a court of competent jurisdiction.”)
 
 (emphasis added).
 

 
 *1083
 
 The circumstances of this case are distinguishable from
 
 Lohman,
 
 which Appel-lees cite in support of the trial court’s ruling. In that case, the Fourth District quashed an order denying a motion to dismiss a paternity action that was filed by the putative biological father and opposed by the child’s mother and her husband.
 
 See
 
 963 So.2d at 989. Unlike this case, which was filed before the child was born and while Appellees were divorced, the paternity action in
 
 Lohman
 
 was filed after the child was born and after the child’s mother and her husband had reconciled.
 
 Id.
 
 at 986. And unlike this case where Mr. Bonomo has never claimed paternity of the child, and there is no indication who, if anyone, was named on the child’s birth certificate as the father, in
 
 Lohman,
 
 the husband’s name was placed on the child’s birth certificate and he also filed an affidavit irrevocably waiving any right to contest that he was the child’s father.
 
 Id.
 
 at 987. And, unlike this case where Appellees’ divorce was final, the divorce proceeding was pending in
 
 Lohman
 
 when the child was born and when the paternity action was filed but was voluntarily dismissed prior to entry of a final judgment of dissolution.
 
 Id.
 
 at 987;
 
 see also id.
 
 at 988 (noting that “[t]his is not a case where, after the initiation of a paternity action, a previously filed dissolution action continued on its way to a final judgment.”).
 

 The circumstances of this case are similar to
 
 L.J.
 
 As in this case, the paternity action in
 
 L.J.
 
 was filed by the undisputed biological father of a child conceived while the mother was married to another man.
 
 See
 
 25 So.3d at 1285. And, as in this case, the child in
 
 L.J.
 
 was born after the child’s mother and her husband were divorced.
 
 Id.
 
 And, as in this case, the trial court in
 
 L.J.
 
 dismissed the paternity action for lack of standing.
 
 Id.
 
 In reversing the trial court, the Second District held that it was error to dismiss the paternity action without giving the biological father an opportunity to present evidence to establish his standing.
 
 Id.
 
 at 1288-89 (citing
 
 Kendrick
 
 and
 
 Van Nostrand v. Olivieri,
 
 427 So.2d 374 (Fla. 2d DCA 1983)). The court also noted that the biological father was willing and able to parent and support the child, whereas the legal father showed no desire to support the child.
 
 Id.
 
 at 1289. Likewise, in this case, the amended complaint alleges that Mr. Nevitt has a desire to assume the responsibilities of parenting the child himself, whereas Appellees essentially admitted in their answer to the amended complaint that they intend to give the child up for adoption and will only parent the child if the adoption is “disrupted.”
 

 This case is also similar to
 
 T.B.
 
 Like Ms. Bonomo, the mother in
 
 T.B.
 
 was not married when the child was born.
 
 See
 
 945 So.2d at 638. Two days after the paternity action was served, the mother married another man.
 
 Id.
 
 The mother’s husband acknowledged paternity of the child and the mother then moved to dismiss the paternity action.
 
 Id.
 
 The trial court granted the motion to dismiss and the putative biological father appealed.
 
 Id.
 
 On appeal, the Second District framed the issue as “whether a paternity action that states a proper claim on the date that it is filed and served may be barred if the mother subsequently marries a second man who files an acknowledgment of paternity,” and then held that “such defensive steps are not an automatic bar to the paternity action.”
 
 Id.
 
 at 639. Likewise, in this case, we conclude that the steps taken by Appellees to undo their divorce and retroactively reinstate their marriage after the paternity action was filed and the child was born do not automatically bar Mr. Nevitt’s paternity action.
 

 Accordingly, consistent with
 
 L.J.
 
 and
 
 T.B.,
 
 we reverse the trial court’s order
 
 *1084
 
 dismissing this paternity action and remand for further proceedings. In doing so, we recognize that there may not be an easy answer to this case. Cases involving children are never easy, and cases involving “quasi-marital children”
 
 [3]
 
 are particularly complicated because they “present major public policy issues that are difficult, if not impossible, to address within the case law method.”
 
 Dep’t of Revenue ex rel. Preston v. Cummings,
 
 871 So.2d 1055, 1061 (Fla. 2d DCA 2004),
 
 approved,
 
 930 So.2d 604 (Fla.2006). That said, it is important for the trial court to resolve this case as expeditiously as possible because the child is already eight months old and an adoption proceeding is apparently pending the outcome of this case. The sooner all of the cases related to this child are resolved and the child is. able to have permanency (whatever form it may take), the better for all concerned, especially the child; and, to that end, we urge the parties to keep the child’s best interests as their paramount concern as this case moves forward.
 

 REVERSED and REMANDED for further proceedings.
 

 WEBSTER and ROWE, JJ., concur.
 

 [1]
 

 . The order was entered by Judge McCallum in Division FM-C. This paternity case was assigned to Judge Wiggins in Division FM-D. The record does not reflect which judge or division the adoption proceeding has been assigned to, although it appears from Mr. Nevitt's brief that it may be in Division FM-F. It may be prudent for all of these cases to be assigned to the same judge upon remand.
 

 [2]
 

 . The trial court’s order also stated that Mr. Bonomo voluntarily dismissed the petition that he had filed to initiate the dissolution case. The voluntary dismissal was not referenced in Appellees’ motion to dismiss, and the record does not include the notice of voluntary dismissal or reflect the date that it was filed in the dissolution case. Presumably, the notice was filed on or after May 6, 2010, when the
 
 nunc pro tunc
 
 order vacating the final judgment of dissolution was entered.
 

 [3]
 

 . This phrase, coined by Judge Altenbernd on the Second District Court of Appeal, describes a child who was born to a married woman but whose biological father is not the woman’s husband. See Chris W. Alternbernd,
 
 Quasi-Marital Children: The Common Law’s Failure in Privette and Daniel Calls for Statutory Reform,
 
 26 Fla. St. U.L.Rev. 219, 220, 227-31 (1999). The child in this case was not a quasi-marital child when he or she was bom because Ms. Bonomo was not married at the time, but the child arguably became a quasi-marital child upon entry of the
 
 nunc pro tunc
 
 order vacating Appellees’ divorce decree.