ORFINGER, J.
Javier Fernandez appeals a final judgment determining that Michael McKenney is the biological and legal father of two children conceived and born while Mr. Fernandez was married to Patricia D. Fernandez (now Mrs. McKenney), the children’s mother. Because we conclude that competent, substantial evidence supports the trial court’s order, we affirm.
This is the second appearance in this court of the litigation between the parties regarding the paternity of Mrs. McKenney’s children. See Fernandez v. McKenney, 776 So.2d 1118 (Fla. 5th DCA 2001). In our earlier opinion, Judge Sharp summarized the dispute as follows:
This case involves unique circumstances. The children can be described as “quasi-marital children” of either type two or type three, as set out by Judge Alten-bernd in his article, [FN1] since they were conceived and born during the time Javier Fernandez and Patricia McKen-ney were married, but (depending on the testimony believed by the finder of fact) after the parties were separated. Based on testimony, Javier and Patricia did not live together except for the first few months of their marriage in Miami. After they moved to Central Florida, she lived separate from him: sometimes with her mother, or on her own, or with Michael McKenney, although she visited Javier at his various residences from time to time.
FN1. Chris W. Altenbernd, Quasi-Marital Children: The Common Law’s Failure in Privette and Daniel Calls for Statutory Reform, 26 Fla. St. U.L.Rev. (1999).
Javier and Patricia were divorced in 1993, and Patricia married Michael McKenney shortly thereafter. Although Javier was named as the children’s father and required to pay child support in the dissolution proceedings, for one reason or another, he has not consistently done so, and although he was given reasonable visitation rights, they have not been consistently exercised. Although there is controverted testimony to some degree, the two children have little or no relationship with Javier. Michael and Patricia have lived as an intact family since before 1993 and earlier, and the only “father” relationship the girls have is with Michael. Patricia and Michael *999 have had a third child born to them since their marriage.
In 1997, Javier discovered that Patricia had married Michael. This led to a discussion concerning her prior relationship with Michael and the actual paternity of the children. They agreed to have a DNA test performed and the results established that Michael was the biological father of both children. Javier accepted the results, but insisted on his visitation rights, which the children apparently resisted. Thus, the ground work for this paternity suit by Michael was laid.
Fernandez, 776 So.2d at 1120 (Sharp, J., concurring specially). We remanded this matter for a determination of whether the children’s best interests would be served by overcoming the presumption that Mr. Fernandez is their father. On remand, the trial judge carefully considered the evidence and entered a detailed final order reaching that conclusion. Our review of the record indicates that the trial court’s order is supported by competent, substantial evidence. Accordingly, we affirm.
Initially, Mr. Fernandez challenged Mr. McKenney’s ability to maintain a paternity action because as a matter of law, the children already had a legal father. In G.F.C v. S.G., 686 So.2d 1382, 1387 (Fla. 5th DCA 1997), we said that a man claiming to be the biological father of a child born to an intact marriage, may have a right to bring a suit for adjudication of paternity under the due process clause of our state constitution, if he has established a relationship with the child, and the legal father has been remiss in fulfilling his role as a father. We qualified our holding by limiting such a claim only when compelling reasons are alleged and established to justify the transfer of parental status from one man to the other, premised generally on findings concerning the child’s best interests. This is just such a case.[1] Although the children were born while Mr. Fernandez’s marriage to Mrs. McKenney was legally intact, this was hardly an intact family in a practical sense. As Judge Sharp’s factual summary demonstrates, Mr. McKenney is the only father the children know. While it is clear that Mrs. McKenney’s conduct has been duplicitous, despite her less than honorable conduct, in the final analysis, the trial court properly made its determination based on a finding concerning the children’s best interests, as was required.
In G.F.C., we expressed concern about recognizing lawsuits instituted by those professing to be biological fathers, thereby impugning the legitimacy of children and disrupting their lives. However, that concern is not warranted under the circumstances in this case. Here, the parties voluntarily submitted to DNA paternity testing that conclusively established Mr. McKenney’s biological connection to the children. Further, the children’s legitimacy is not affected by this paternity action. See Daniel v. Daniel, 695 So.2d 1253 (Fla.1997) (holding that a child’s legitimacy is not affected by a determination of paternity). Lastly, this action cannot be said to disrupt the children’s lives because they have only known their family to include Mr. and Mrs. McKenney. They have never known Mr. Fernandez as an integral part of their family life.
AFFIRMED.
SAWAYA, C.J. and PLEUS, J., concur.

. In addition to seeking a determination of paternity, Mr. McKenney also sought declaratory relief pursuant to chapter 86, Florida Statutes. That is also a proper method to resolve the instant dispute. See Kendrick v. Everheart, 390 So.2d 53 (Fla.1980).