HAWKES, J.
 

 This appeal concerns a paternity suit brought by Appellee Patrick M. Sweeney — the biological father — against Appel
 
 *129
 
 lant John Slowinski — the legal father— concerning the parental and custodial rights over J.S. (the child). At the time the child was born, the mother was still married to the legal father. She has since died. In the order on appeal, the trial court granted the paternity petition and awarded legal rights and physical custody to the biological father. This was incorrect. Because the child was born to an intact marriage between the legal father and mother, the biological father was precluded from bringing the paternity suit and the trial court should not have considered it.
 

 Florida law is very specific regarding who may bring paternity suits. The statutes governing paternity contain language indicating biological fathers may not challenge the paternity of children born to intact marriages. For example, section 742.011, Florida Statutes (2010), states paternity suits may be brought only “to determine the paternity of the child when paternity has not been established by law or otherwise.” Paternity is “otherwise” established when the child is born to an intact marriage and recognized by the husband as his own child.
 
 See G.F.C. v. S.G.,
 
 686 So.2d 1382, 1385 (Fla. 5th DCA 1997). In such circumstances, the husband is considered to be the child’s “legal” father, regardless of whether he is the biological father.
 
 See Lander v. Smith,
 
 906 So.2d 1130, 1131 n. 1 (Fla. 4th DCA 2005) (noting the mother’s husband at the time of a child’s birth is the “legal” father). In addition, section 742.10, Florida Statutes (2010), states paternity proceedings should be brought only to determine the “paternity for children born out of wedlock.”
 

 Reading these provisions together, they indicate a child born to an intact marriage cannot be the subject of a paternity proceeding brought by a biological father. This interpretation is supported by caselaw.
 

 In
 
 G.F.C. v. S.G.,
 
 686 So.2d at 1383, the Fifth District addressed a situation where a man claiming to be the biological father of a child born to an intact marriage brought a petition contesting the child’s paternity. The Fifth District found that although men have the right to sue for paternity under certain circumstances, chapter 742 “does not expand this right to a man such as G.F.C. who declares himself to be the father of a child born to an intact marriage.”
 
 Id.
 
 at 1385. The Fifth District also found the biological father lacked any right to sue for paternity under common law, as common law gave only the husband the right to challenge the paternity of a child born during the marriage.
 
 Id.
 
 at 1384.
 

 The Second District reached the same conclusion in
 
 I.A. v. H.H.,
 
 710 So.2d 162, 164 (Fla. 2d DCA 1998). In
 
 I.A.,
 
 the legal father married the child’s mother two months after the child’s birth and treated the child as if it was his own.
 
 Id.
 
 at 165. Citing
 
 G.F.C.,
 
 the Second District held that because the child was born to an intact marriage, the putative father had no cause of action to challenge the child’s paternity.
 
 Id.
 
 at 164-65. It noted that although neither party had raised this argument during the proceedings below,
 

 it is our duty to notice and correct jurisdictional defects or fundamental error even when they have not been identified by the parties. Such is the case where the trial court has granted relief that is not authorized by law, or pursuant to a cause of action that either does not exist or is not available to the plaintiff.
 

 Id.
 
 at 165 (internal citations omitted). Numerous other cases have followed
 
 G.F.C.
 
 and
 
 I.A.
 
 by refusing to recognize a paternity suit by a biological father as a cognizable cause of action when the child is born to an intact marriage.
 
 See Williams-Raymond v. Jones,
 
 954 So.2d 721, 722 (Fla. 4th DCA 2007) (finding a child’s paternity may
 
 *130
 
 not be contested when the wife marries after the child is born and the husband participates in parenting the child);
 
 Bellomo v. Gagliano,
 
 815 So.2d 721, 722 (Fla. 5th DCA 2002) (stating “section 742.011 does not extend to permit the alleged biological father of a child born of an intact marriage to sue for a determination of paternity”);
 
 see also S.D. v. A.G.,
 
 764 So.2d 807, 809 (Fla. 2d DCA 2000) (stating “a putative father has no right to initiate a paternity action concerning the child of an intact marriage if both the married woman and her husband object”).
 
 [1]
 

 Here, it is undisputed that the child was born during the mother’s marriage to the legal father. Accordingly, despite the fact that the legal father was not the child’s biological father, this paternity suit is not a cognizable cause of action. The record does not show that this argument was raised below. However, because it was fundamental error for the trial court to grant relief pursuant to this nonexistent cause of action, we may address the issue on our own initiative.
 
 See I.A.,
 
 710 So.2d at 165. For this reason, the final judgment of paternity is REVERSED and the matter REMANDED for the trial court to dismiss the suit.
 

 THOMAS and ROBERTS, JJ., Concur.
 

 [1]
 

 . Cases do theorize an exception to this rule under the due process clause of the Florida Constitution. The exception would occur "only in those circumstances where there is a claim of a developed relationship between the putative father and the child[;] an allegation of a mere biological link to the child will not suffice.”
 
 G.F.C.,
 
 686 So.2d at 1387. However, this exception has largely been discussed in passing, and often in a denigrating manner.
 
 See Bellomo v. Gagliano,
 
 815 So.2d at 722 (stating the contours of this "hypothetical right” have not been fully explored);
 
 G.F.C.,
 
 686 So.2d at 1387 (noting the exception only "parenthetically”);
 
 but see Fernandez v. McKenney,
 
 776 So.2d 1118, 1121 (Fla. 5th DCA 2001) (Sharp, J., concurring) (concurring opinion describing and applying exception). Inasmuch as caselaw is unclear regarding whether the exception should even be recognized — and considering that its application would directly contradict the statutory provisions noted above — we reject this "hypothetical” exception as invalid and refuse to recognize it.