EMAS, J.
F.M. (“the father”), appeals from a final judgment terminating parental rights as to his three children, C.M., K.M., and Q.M. The three children came to the attention of the Department of Children and Families (“DCF”) after it was reported that the children’s stepmother had been beating the father and her three stepchildren. At the time, the biological mother lived in Louisiana. The father was given custody of the children, but when the father and the children later moved back in with the abusive stepmother, DCF intervened, and the stepmother moved out. A petition for dependency was filed in Miami-Dade circuit court on September 24, 2010, and the children were adjudicated dependent on October 6, 2010, but the children remained in the custody of the father.
In January 2011, the court ordered that the biological mother be given custody of the children, and the children moved with her to Louisiana. The father, who also moved to Louisiana, was initially granted unsupervised visitation, later changed by court order to supervised visitation. Both parents were given case plans, and the father was ordered to pay child support.
*380 On July 29, 2011, the father appeared before a court in Louisiana and obtained an ex parte temporary custody order for the children without advising the Louisiana court of the existing proceedings in Miami-Dade. The father then appeared at the mother’s home, accompanied by police and the ex parte order, to take the children from her custody, but was unsuccessful due to the intervention of DCF and the mother’s attorney. On July 30, 2011, the Louisiana court vacated its ex paHe temporary order, finding that the father had failed to “disclose a full and total picture of the parties, the various relationships appertaining, and the previous orders of Florida that remain in full force and effect.” The following day, the Miami-Dade trial court ordered the father have no contact with the children. The father was also ordered to appear on August 19, 2011, before Judge Lederman, or be held in contempt. The father failed to appear, and the trial court issued a writ of bodily attachment.
At a judicial review/permanency hearing on September 2, 2011, which the father attended by phone, the court found the father not in compliance with his case plan. DCF filed a petition for termination of the father’s parental rights (“TPR”) on September 23, 2011, seeking termination based on the father’s failure to complete his case plan and his attempt to take the children from the mother with a fraudulent custody order.
DCF filed affidavits stating the father was evading service and, at a hearing on November 15, 2011, the court ordered the father be served by publication. The court set an advisory hearing for February 29, 2012. Notice of the advisory hearing and substitute service of process was provided, pursuant to section 39.801(3)(b), Florida Statutes (2010), via publication in local newspapers in both Miami-Dade and Louisiana where the father had reportedly last lived. The notice identified the father by name, provided his last known address, and read:
Notice is hereby given that a petition under oath has been filed in the above styled Court for the termination of your parental rights, respectively and the permanent commitment of the minor child(ren), C.M., K.M. and Q.M., to the Florida Department of Children and Families for subsequent adoption. You are further notified that the ADVISORY HEARING on the above styled cause will be held at the Juvenile Justice Center at 3300 NW 27th Avenue, Miami, Florida 33142 before the Honorable Cindy Lederman, Courtroom 2-7, on the 29th of February, 2012 at 1:30 p.m.
WARNING: FAILURE TO PERSONALLY APPEAR AT THIS ADVISORY HEARING, ON THE DATE AND AT THE TIME LISTED ABOVE, CONSTITUTES CONSENT TO THE TERMINATION OF PARENTAL RIGHTS OF THIS CHILD (OR CHILDREN). IF YOU FAIL TO APPEAR ON THE DATE AND TIME SPECIFIED, YOU MAY LOSE ALL LEGAL RIGHTS AS A PARENT TO THE CHILD OR CHILDREN NAMED IN THE PETITION ATTACHED TO THIS NOTICE.
Your child(ren) will then be permanently committed to the State of Florida Department of Children and Families, for subsequent adoption, without further warning.
At the hearing on February 29, 2012, both the mother and the father appeared by phone. When the judge discovered the father was appearing telephonieally, the following brief exchange took place:
The Court: Well that’s not good enough. You’re supposed to be here.
The Father: I couldn’t afford it.
The Court: Well, that’s really too bad.
*381 DCF: How is he on the phone?
The Court: Okay, so go ahead.
Counsel for the mother: With the mother?
DCF: No, that’s [the father]. Judge, well, [the father] is present via phone. There is publication. His attorney over there [in Louisiana] was noticed to be present.
The Court: He is not present. I am granting the termination of parental rights and closing the case. Mr. M. has no contact with his children.
[[Image here]]
The Court: ... Well, he’s not here, and a default has been issued. Mr. M., your parental rights have been terminated and you have no contact whatsoever with these children.
The court terminated the father’s parental rights. In its final judgment, the court found that the father had abandoned his children, had a history of absconding with the children, had failed to make any provisions for the children’s support, and that pursuant to section 39.811(6)(d), the protection of the children warranted the termination of the father’s parental rights.
Section 39.801(3)(a), Florida Statutes (2011), provides that prior to the termination of a parent’s parental rights, the court must provide “notice of the date, time, and place of the advisory hearing for the petition to terminate parental rights.” This notice must contain specified language set forth in section 39.801(a)(7), and service by publication is authorized pursuant to the rules of civil procedure when a parent cannot be served. Importantly, section 39.801(3)(d) provides: “If the person served with notice under this section fails to personally appear at the advisory hearing, the failure to personally appear shall constitute consent for termination of parental rights by the person given notice.”
“It is well-settled that section 39.801(3)(d) and Florida Rule of Juvenile Procedure 8.510(a)(3) provide statutory and procedural authority for the court to accept a parent’s failure to appear at an advisory hearing as constructive consent to termination of parental rights by default.” B.H. v. Dep’t of Children & Families, 882 So.2d 1099, 1100 (Fla. 4th DCA 2004).[1] However, “constructive consent in termination of parental rights cases should be a disfavored result.” Id. Of significance, “termination of parental rights should never be determined on a default basis or by ‘gotcha’ practices when a parent makes a reasonable effort to be present at a hearing and is delayed by circumstances beyond his control.” Id. In B.H., a case similar to the instant case, the father’s parental rights were terminated after he appeared telephonically at the advisory hearing, explaining he could not appear personally because he lived in another state, the notice had been too short, and he was “sitting in about a foot and a half of snow.” The trial court found that the father’s failure to appear personally constituted consent to the TPR, and terminated the father’s parental rights. The Fourth District Court of Appeal reversed, holding that “under the facts of this case, father’s appearance by telephone constituted a personal appearance for purposes of section 39.801(3)(d)” and that the trial court had abused its discretion in entering a default.[2] *382 Id. Importantly, the Fourth District Court of Appeal noted that the
father, through his appearance by telephone, clearly sought to interject himself into the proceedings and enter a denial to the court entering a termination to his parental rights.... Father’s appearance by phone enabled the court to inform the parent of the significance of the advisory hearing and thereby comply with the purpose of the statute requiring a parent’s personal appearance.
Id. at 1101-02.
In the instant case, the father lived in Louisiana and appeared by phone, explaining that he was not appearing in person because he could not afford to do so. The transcript reveals that the trial court failed to seek any explanation or further detail from the father regarding his financial ability to travel to Florida to appear in person for the hearing. The failure to make further inquiry or seek further explanation, and thereafter make a determination of the reasonableness of that explanation, was an abuse of discretion. B.H., 882 So.2d at 1102. See also In re H.S., 995 So.2d 516 (Fla. 2d DCA 2008) (reversing TPR where court refused to allow mother to appear telephonically to explain the reasons for her nonappearance); In re C.M., 941 So.2d 1255 (Fla. 2d DCA 2006) (reversing TPR where father was delayed in trav-elling to the courthouse by public transportation); R.P. v. Dep’t of Children & Families, 835 So.2d 1212 (Fla. 4th DCA 2003) (reversing TPR where father had difficulty getting to hearing on time due to transportation issues and had requested a continuance). Cf. S.C. v. Dep’t of Children & Families, 877 So.2d 831 (Fla. 4th DCA 2004) (affirming TPR where trial court gave mother opportunity to explain her failure to appear and, following mother’s testimony, found her explanations were contradictory and not credible).
DCF argues that the trial court did not abuse its discretion because the father had been represented by private counsel in the proceeding in Louisiana, and that this demonstrated the father had the financial resources to appear in person for the advisory hearing. This conclusion, however, is unsupported by the record. The trial court did not ask the father to explain how he was able to be represented by private counsel in Louisiana; whether he had paid private counsel for that representation; if so, how much he paid private counsel; and the source of the funds used to pay counsel. Moreover, private counsel had represented the father in Louisiana seven months before the February 29, 2011 hearing, and there was no indication — or opportunity for the father to explain — whether his financial status had changed in the intervening period.[3]
Given the father’s initial explanation for attending telephonically, the trial court should have further inquired and afforded the father an opportunity to explain why he could not appear in person, after which the trial court could have made a record determination of the genuineness or reasonableness of the proffered explanation.
Reversed and remanded to the trial court to conduct further proceedings con *383 sistent with this opinion.[4]

. See also Florida Dep’t of Children & Family Servs. v. P.E., 14 So.3d 228 (Fla.2009) (upholding the constitutionality of the default provision in section 39.801(3)(d)).

. The Fourth District Court of Appeal explained that by appearing telephonically, the father attempted to make his presence known and that his failure to appear personally was *382 accompanied by a reasonable explanation. Id. at 1102.

. After the trial court had disconnected the father from the proceeding, it was discovered that the father had called in using a telephone with a "786” area code. DCF argues that this demonstrates the father was in Miami at the time of the hearing. However, there is no evidence in the record to support this conclusion, and it is just as (if not more) likely that the father, who at one time lived in Miami, made the call using a cell phone bearing a 786 area code.

. We conclude the other issues raised by the father are without merit.