CLARK, J.
On appeal are the trial court’s order granting Patrick M. Sweeney’s motion to intervene in the temporary custody action under chapter 751, Florida Statutes, and the order transferring jurisdiction of the cause to the Pennsylvania court system, where Appellee resides and where the minor child is currently located. Because the trial court’s orders are contrary to the law, the orders are reversed and this case is remanded.
The child was born in November 2004, while the mother was married to John Slowinski. The marriage was never dissolved. Ch. 61, Fla. Stat. There is no dispute under the facts and the law that the child was born within wedlock and is not “a child born out of wedlock.” The child resided with the maternal grandmother from birth. John Slowinski’s parental rights and the attendant responsibilities of support were never terminated under any of the applicable legal procedures. §§ 39.801, et seq., Fla. Stat.; see also §§ 63.087, 742.18, Fla. Stat.
Upon the mother’s death in September 2008, the child’s maternal grandmother filed her petition for temporary custody, pursuant to section 751.03, Florida Statutes, on September 15, 2008. Bradberry v. Slowinski, Case No.2008 DR 001829 (4th Jud. Cir. Clay Cnty.). John Slowinski, the child’s parent as defined in sections 39.01(49), 61.13001(1)(d) and 63.062(1)(b)1., Florida Statutes, executed his consent and that consent was attached to the petition. § 751.03(8)-(9), Fla. Stat. On September 22, 2008, the trial court entered an order granting temporary custody to the maternal grandmother and the child continued to reside with her.
The same day the grandmother filed her petition, on September 15, 2008, Patrick Sweeney, of Pennsylvania, filed his petition for determination of paternity, pursuant to section 742.021, Florida Statutes, in the same circuit court (case no. 2008 DR 001834). Although Mr. Sweeney did not meet any of the statutory definitions of a parent in chapters 39, 61, or 63, Florida Statutes, he alleged that he was the biological father of the child as evidenced by DNA testing. Two years later, the trial court entered its final judgment of paternity declaring Mr. Sweeney the child’s father. The trial court declared that John Slowinski’s “paternal relationship” with the child was “severed” due to his abandonment of the child, changed the child’s surname to Sweeney, ordered that the child’s birth certificate be amended to name Mr. Sweeney as the father, and ordered the grandmother to transfer the child to Mr. Sweeney.
The grandmother complied with the paternity order and the child was relocated to Pennsylvania in September 2010, a few weeks before the child’s sixth birthday. However, on appeal, this Court reversed the trial court’s order and held that the child could not be the subject of a paternity proceeding under chapter 742, Florida Statutes, because he was born to an intact marriage, not born out of wedlock. Slowinski v. Sweeney, 64 So.3d 128 (Fla. 1st DCA 2011). Finding that it was “fundamental error for the trial court to grant relief pursuant to this nonexistent cause of action,” this Court reversed the final judgment in its entirety, including the paternity declaration, direction to change the child’s name and birth certificate, and the finding that Mr. Slowinski’s relationship to the child was “severed” due to abandonment.[1] The cause was remanded for dismissal of the paternity action. Id. at 130.
*76 In accordance with this Court’s mandate, the circuit court dismissed the paternity action, case number 2008 DR 001834. The court then readdressed case number 2008 DR 001829, the grandmother’s proceeding under chapter 751, “[s]o as not to leave the child in legal limbo.” The trial court acknowledged Mr. Slowinski’s original consent to temporary custody with the maternal grandmother, and reinstated temporary custody with her. This order was entered on July 20, 2011 in case number 2008 DR 001829.
Mr. Sweeney readily admitted (during the hearing on his motion to intervene, in April 2012), that when the grandmother went to Pennsylvania to retrieve the child pursuant to the Florida circuit court’s order reinstating temporary custody with the grandmother, Mr. Sweeney refused to comply. He testified that he did not abide by that order because he did not “believe it is [in the child’s] best interest, you know.... I feel its unjust.” Sweeney further testified that he did not believe the Florida circuit court’s order was constitutional. A few days after the Florida court reinstated custody with the grandmother, Mr. Sweeney began proceedings in Pennsylvania on July 25, 2011 by filing a complaint seeking a custody determination from that state’s trial court.[2] The child has remained in Pennsylvania with Mr. Sweeney since July 20, 2011, in clear violation of the Florida court’s custody order and with no legal authority.
The maternal grandmother responded to Mr. Sweeney’s Pennsylvania proceedings by attempting to enforce the Florida court’s order in that forum. She objected to the Pennsylvania court’s exercise of jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (“UCCJEA”) due to the existence of her earlier-filed Florida custody case and the Florida order in force. The Pennsylvania trial court agreed that it was required to refrain from considering the action and denied Mr. Sweeney’s petition. However, a Pennsylvania appellate court reversed this denial and directed the trial court to communicate with the Florida trial court, pursuant to the UCCJEA.[3] The record of this appeal does not contain evidence of or reference to any such communication between the state courts. See §§ 61.519, 61.522, Fla. Stat.
On March 27, 2012, Mr. Sweeney filed his motions to intervene in the Florida temporary custody case (case no. 2008 DR 001829) and to transfer jurisdiction to Pennsylvania or stay the Florida action. Throughout, he has continued to detain the child in Pennsylvania. After the evidentiary hearing on the motion to intervene, the court found that Mr. Sweeney qualified as an “extended family member” as defined by section 751.011(2)(a), Florida Statutes, because his status as the child’s biological father made him “[a] relative of a minor child within the third degree by blood or marriage to the parent.” Thus, the trial *77 court found that as the biological father, Mr. Sweeney had a sufficient legal interest in the outcome of the case to allow him to intervene in the chapter 751 custody case. Fla. R. Civ. P. 1.230. The court noted that the child had resided with Mr. Sweeney in Pennsylvania since September 2010 and also referred to its order entered July 20, 2011 which reinstated temporary custody with the grandmother in Florida. The court never mentioned Mr. Sweeney's persistent, willful failure to comply with that order.
During the hearing on his motion to transfer jurisdiction, Mr. Sweeney denied that he was violating the circuit court’s temporary custody order in effect because “I’m still currently litigating it.” The trial court granted the motion and entered its order transferring jurisdiction to Pennsylvania on July 23, 2012. The trial court specifically found that the child had been residing in Pennsylvania with Mr. Sweeney “continuously since September 8, 2010” and thus Pennsylvania was a more convenient forum “in which to assess the best interests of the child.” The fact that during the entire year prior to entry of that order, the child’s residence in Pennsylvania was due to Mr. Sweeney’s violation of the temporary custody order in force was ignored.
The trial court erred by allowing Mr. Sweeney to intervene in the chapter 751 proceedings. As explained in Morris v. Rabara, 145 So.2d 265, 267 (Fla. 2d DCA 1962):
It is contrary to the principles of justice to permit one who has flaunted [4] the orders of the court to demand judicial assistance. An appellate court is authorized to enforce an order made by the lower court and which has been violated by a party to the proceedings.
A litigant “is presumed to agree to abide by the rules when by his action the machinery of the judicial system is put in operation.” Whiteside v. Whiteside, 468 So.2d 407, 409 (Fla. 4th DCA 1985). Further, “[a] party in contempt is likewise not entitled to a hearing or a trial of his cause out of which the contempt arose until he purges himself of the contempt.” Jaffe v. Snow, 610 So.2d 482, 487 (Fla. 5th DCA 1992). In Whiteside v. Whiteside, the Fourth District Court of Appeal reversed a default judgment against a former wife who refused to transfer custody of the child to the former husband under the court’s temporary custody order. The appellate court held that while the trial court “may not permanently bar the [violator’s] assertion of her position in the instant case, it may properly refuse to consider her defenses until she has purged herself of the contempt by complying with the court’s order.” Whiteside, 468 So.2d at 409. While there has yet to be a finding by the trial court that Mr. Sweeney is in contempt of court, it follows from the reasoning in the cases cited above that before Mr. Sweeney’s motion to intervene in the pending chapter 751 custody action was considered by the trial court, the court was required to address and resolve his refusal to obey the custody order already in effect in that action.
Mr. Sweeney is not free to ignore a custody court order merely because he disagrees with it. He cannot supersede a court order with his own opinion of what is just and what is not. The trial court’s favorable consideration of Mr. Sweeney’s motion during his unabashed defiance of a custody order provides incentive for disrespect of court orders and the rule of law in general. In Stanley v. Stanley, 756 So.2d 210 (Fla. 4th DCA 2000), a favorable ruling *78 for a former wife who refused to transfer custody of the child to the former husband was reversed. There, the appellate court held that the award of child support ar-rearages would “reward Appellee’s willful and persistent violation of the custody order by bestowing on her the title of ‘de facto custodial parent’ ” when she was the custodian for a 14-month period “only by virtue of her willful violation of the order transferring custody to appellant.” Stanley, 756 So.2d at 213. The court opined that to permit the mother “to profit from her own wrongdoing ... allows her to be the judge of the validity of the court’s order, and by her own disobedience, allows her to set it aside.” Id. Allowing a party to simply ignore a court order “would make a mockery of the judicial power.” Id.; see also Carnival Corp. v. Beverly, 744 So.2d 489, 496 (Fla. 1st DCA 1999) (violation of a direct order of the trial court is contumacious, even if the order is erroneous). The order allowing Mr. Sweeney to intervene despite his blatant and continuing violation of the temporary custody order must be reversed.
Even if Mr. Sweeney had relinquished the child, as ordered, and proceeded without the cloud of disobedience barring his claim, he does not qualify as an “extended family member” as defined by section 751.011(2)(a), Florida Statutes. Mr. Sweeney’s contribution of DNA, resulting in the birth of this child within an intact marriage — to which he was not a party — does not establish him as an “extended family member.” Section 751.011(2)(a) defines and extended family member as “a person who is ... [a] relative of a minor child within the third degree by blood or marriage to the parent.” (emphasis added). Mr. Sweeney was never married to the mother and is not related by blood to the mother or Mr. Slowin-ski. The legislature’s definition did not express an intention to include any person related to the child by blood, but related to the child due to a blood or marriage relationship to the parent.
Likewise, Mr. Sweeney’s DNA test results do not establish him as the father of this child for purposes of custody, support, inheritance, or other legal consequence. Under the facts of this case, his DNA is legally insignificant. The Florida Supreme Court has defined the “legal father” as the man to whom the mother was married when the child was born and whose name appears on the birth certificate (here, the original certificate). Dep’t of Health & Rehabilitative Servs. v. Privette, 617 So.2d 305, 307 (Fla.1993). Only one man may be designated the child’s “legal father” (with the rights and responsibilities thereof) at any given time. G.F.C. v. S.G., 686 So.2d 1382 (Fla. 5th DCA 1997). Florida does not recognize “dual fathership.” R.H.B. v. J.B.W., 826 So.2d 346, 350 (Fla. 2d DCA 2002) (reversing temporary child support order against putative biological father when child was born to intact marriage and husband of child’s mother remained married to her). Accordingly, this child has one father and that is the man to whom his mother was married when the child was born, Mr. Slowinski.
Finally, we note that in the order on appeal transferring jurisdiction, the trial court states that it had “established that Mr. Slowinski abandoned [the child] approximately two weeks after his birth and did not contact him or support him in any way for years.” However, the record before this Court contains no judicial termination of Mr. Slowinski’s parental rights after proper notice and the other procedures required by section 39.801, et seq., Florida Statutes. See F.M. v. State Dep’t of Children & Families, 95 So.3d 378 (Fla. 3d DCA 2012) (§ 39.801(3)(a) requires that “prior to termination of a parent’s parental *79 rights, the court must ‘provide notice of the date, time and place of the advisory hearing for the petition to terminate parental rights’ ”). In addition, the trial court stated that Mr. Slowinski was only “technically still married to [the child’s] mother at the time of her death.” The court does not refer to any evidence that the mother’s marriage to Mr. Slowinski was not ceremonially entered into or otherwise unqualified for the presumption that the marriage was legal and valid and that the child born into such marriage was legitimate. The marriage of the mother to Mr. Slowinski and the legal effects thereof may not be brushed aside so casually — and certainly not retroactively dissolved — in the limited context of the action for temporary custody under chapter 751, as the pleadings currently define the action.
The order granting Mr. Sweeney’s motion to intervene is REVERSED due to Mr. Sweeney’s persistent refusal to comply with the current, valid temporary custody order in effect; the erroneous determination that Mr. Sweeney is an “extended family member” as defined by section 751.011(2), Florida Statutes; and because the parental rights of the man married to the mother at the time the child was born have not been terminated in accordance with Florida law, which does not recognize dual or concurrent fathers. Accordingly, Mr. Sweeney is not a proper party to the trial court proceedings and the order transferring jurisdiction to Pennsylvania is likewise REVERSED. This case is remanded for further proceedings consistent with this opinion, including immediate enforcement of the current Florida temporary custody order.
MARSTILLER, J., and BOLES, W. JOEL, Associate Judge, concur.

. At oral argument, Mr. Sweeney’s attorney was unable to explain by what authority Mr. Sweeney had enrolled the child in school in Pennsylvania. The reversal of the paternity *76 order erased the erroneous declaration that Mr. Sweeney was the child's father, with the legal rights and responsibilities attendant to that status.

. Mr. Sweeney’s refusal to transfer the child and attempt to avoid the Florida order by seeking a more favorable judicial audience in Pennsylvania is just the type of forum shopping the UCCJEA was designed to prevent. The Pennsylvania court, as the second forum to consider custody of this child, was obligated by the UCCJEA to stay its exercise of jurisdiction until it made contact with the Florida circuit court. Mondy v. Mondy, 428 So.2d 235, 238 (Fla. 1983). The parties, with counsel, are entitled to participate in this communication. § 61.511(2), Fla. Stat.

. Pennsylvania's codification of the UCCJEA is located at section 5401, et seq., Pennsylvania Consolidated Statutes.

. [ ] Undoubtedly, the Court meant "flouted” the orders of the court.