DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CONNOR PERKINS,**
Appellant,

v.

**TRENEKA SIMMONDS,**
Appellee.

No. 4D16-3502

[October 4, 2017]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Arthur M. Birken, Judge; L.T. Case No. 15-10975 (35).

Nancy A. Hass of Nancy A. Hass, P.A., Hollywood, for appellant.

Victor H. Waite of Law Office of Victor H. Waite, P.A., Hollywood, for appellee.

BUCHANAN, LAURIE E., Associate Judge.

Appellant, Connor Perkins, the biological father of C.P. ("the Child"), appeals the trial court's order dismissing his Petition to Establish Paternity with prejudice on the grounds that the Child was born into an intact marriage of the mother to another man. Appellant argues that the court erred in finding that he lacked standing to bring the petition based on the facts of the case. Alternatively, he asserts that section 742.011 of the Florida Statutes (2015) violates the constitutional guarantee to equal protection. We decline to address Appellant's equal protection argument at this juncture, but find merit to his standing argument. Therefore, we reverse and remand for further proceedings as outlined below.

In February of 2013, Appellee, Treneka Simmonds ("the Mother"), gave birth to the Child. The Mother declined to provide paternal information on the Child's birth certificate, but the Child was given Appellant's last name. DNA tests confirm that Appellant is the Child's biological father.

In September of 2015, Appellant filed a Petition to Establish Paternity, Child Support and for Other Relief. The Mother moved to

dismiss Appellant's petition, alleging that Appellant did not have standing to pursue paternity because the Mother was married to Appellee, Shaquan Ferguson ("Husband"), before she gave birth to the Child and the marriage remained intact. Appellant responded that he was not aware that the Mother was married.

The court conducted an evidentiary hearing on the Mother's motion to dismiss wherein the Mother, Husband, and Appellant testified. Briefly stated, Appellant testified that he was a fixture in the Child's life from birth on. The Mother, in turn, testified that Appellant was an absentee father and her Husband testified that he raised the Child as his own. Considering the evidence presented at the hearing, the court issued an order wherein it found the Mother's testimony "generally not credible." The court also rejected the testimony of Husband, noting that the Mother and Husband lived in different states. The court gave credence to Appellant's testimony, finding that Appellant was at the hospital when the Child was born and raised the Child with the Mother. Specifically, the court found that Appellant took the Child to doctor's appointments, enrolled the Child in daycare, voluntarily paid child support, and that the Child calls Appellant "daddy." The court also found that Appellant had no idea that there was an intact marriage when the Child was born as the Mother told Appellant she married for immigration purposes and was getting a divorce.

Despite the foregoing findings, the Court concluded:

> The facts strongly favor the [Appellant] having some involvement in the child's life. However, the law requires this Court to do something else. Perhaps there needs to be some movement in the law. However, it needs to come from a higher Court or from the Legislature. The function of this Court is to follow and uphold the law as this Court understands it.

> "A putative father has no right to establish paternity of a child who was born into an intact marriage, when the married woman and her husband object." *Johnson v. Ruby*, 771 So. 2d 1275, 1275–76 (Fla. 4th DCA 2000). No exceptions fall under the facts of this case as presented to the court.

Appellant argues that the court's ultimate legal conclusion was incorrect, and we agree.

Chapter 742 of the Florida Statutes governs the determination of parentage. Section 742.011 provides the following basis for the court's

2

jurisdiction over the parties:

> Any woman who is pregnant or has a child, any man who has reason to believe that he is the father of a child, or any child may bring proceedings in the circuit court, in chancery, to determine the paternity of the child **when paternity has not been established by law or otherwise.**

§ 742.011, Fla. Stat. (2015) (emphasis added).

The law presumes that the husband of the biological mother of a child is the child's legal father. *J.T.J. v. N.H.*, 84 So. 3d 1176, 1179 (Fla. 4th DCA 2012). "'This presumption is one of the strongest rebuttable presumptions known to law and is based on the child's interest in legitimacy and the public policy of protecting the welfare of the child.'" *Id.* (quoting *G.T. v. Adoption of A.E.T.*, 725 So. 2d 404, 410 (Fla. 4th DCA 1999)). Because of the strength of this presumption, many courts have held that "a putative father has no right to seek to establish paternity of a child who was born into an intact marriage when the married woman and her husband object." *Johnson v. Ruby*, 771 So. 2d 1275, 1275–76 (Fla. 4th DCA 2000); *see also Tijerino v. Estralla*, 843 So. 2d 984, 985 (Fla. 3d DCA 2003). The facts in *Johnson* did not call for an inquiry into the relationship between the child and the putative father, because in *Johnson* the child was not yet born at the time the putative father filed his petition to establish paternity. *Id.* The First District has gone so far as to suggest that the presumption of legitimacy may never be rebutted. *Slowinski v. Sweeney*, 64 So. 3d 128, 129 (Fla. 1st DCA 2011).[1] This Court, however, has reaffirmed that the presumption of legitimacy afforded to a child born within an intact marriage is exactly that: a ***presumption***. Thus, the presumption of legitimacy may be rebutted in

---

[1] The *Slowinski* court based its decision on the Fifth District's decision in *G.F.C. v. S.G.*, 686 So. 2d 1382, 1385 (Fla. 5th DCA 1997), wherein the court held that chapter 742 does not allow a man "who declares himself to be the father of a child born to an intact marriage" to sue for paternity. However, the *G.F.C.* court recognized that there may be an exception to this rule in "circumstances where there is a claim of a developed relationship between the putative father and the child." *Id.* In a footnote, the *Slowinski* court noted the potential exception, but outright rejected it, writing it off as a "hypothetical" which "has largely been discussed in passing, and often in a denigrating manner." 64 So. 3d at 130 n.1. The *Slowinksi* court apparently failed to note the holding of this Court in *Lander v. Smith*, 906 So. 2d 1130, 1134 (Fla. 4th DCA 2005), nor did it realize that post-*G.F.C.*, the Fifth District has not only recognized, but applied the exception. *Fernandez v. Fernandez*, 857 So. 2d 997, 999 (Fla. 5th DCA 2003).

certain, rare circumstances.

In the most recent opinion on the subject, *M.L. v. Department of Children and Families*, this Court wrote "to clarify" that:

> [W]hile a biological father who is a stranger to an existing marriage into which a child is born has extremely limited rights, his ability to establish his paternity is not left entirely to the husband's "whim." . . . [A] biological father may seek to establish his paternity, even when both the mother and husband object, if "common sense and reason are outraged" by applying the marital presumption to bar such an action.

42 Fla. L. Weekly D999 (Fla. 4th DCA May 3, 2017), (internal citations omitted).

An example of when the application of the presumption of legitimacy outraged common sense and logic can be found in *Lander v. Smith*, 906 So. 2d 1130 (Fla. 4th DCA 2005). There, the biological father of a child conceived with an otherwise married woman petitioned to establish his paternity of the child. *Id.* at 1131. At the time she conceived the child, the mother was separated from her husband and told the biological father that she was getting a divorce. *Id.* at 1132. It was uncontested that the biological father was indeed the child's father, and the child was given the biological father's last name. *Id.* at 1131. Additionally, the biological father alleged that he "provided financial support to [the mother] before [the child's] birth, provided financial support to pay for the expenses of [the child's] birth and his care, paid child support to [the mother], and developed a relationship with [the child]." *Id.* Nonetheless, the mother and her husband contested the biological father's petition, and the trial court dismissed the petition, ruling that the biological father lacked standing to pursue paternity because of the presumption of legitimacy afforded to children born during an intact marriage. *Id.* at 1132.

We reversed the court's ruling on appeal, holding that "the presumption of legitimacy [did] not bar a paternity action under the factual circumstances presented" and remanded for additional proceedings for the court to consider the best interests of the child. *Id.* at 1135. In doing so, we reasoned:

> This case rests at the intersection of paternity and legitimacy where there exists a natural tension between reason and emotion, law and social consciousness, and the presumption

4

of legitimacy and the best interests of a child in a modern world characterized by family structures of endless varieties and mores in constant flux. We are mindful of the presumption of legitimacy and the importance that it serves for children who would otherwise face uncertainty in their family lives. [The child] is not one of these children. For [the child], it cannot be said that strictly applying the presumption of legitimacy is irrefutably in his best interests where it is uncontested that [the petitioner] is his biological father and where [the petitioner] is willing to assume that role in [the child's] life. This is especially so in light of the lack of evidence that [the husband] has played any paternal role in [the child's] life. For [the child] it is likely that strict adherence to the presumption of legitimacy could operate to thrust upon him the very uncertainty that it is intended to avoid.

*Id.* at 1134.

This case is on all fours with *Lander*. Like in *Lander*, it is uncontested that Appellant is the biological father and that the Child was given Appellant's last name. Also like in *Lander,* Appellant alleged that the Mother represented she was getting or was divorced when she had the Child. Additionally, Appellant also established that he financially supported the Child. Most importantly, as was the case in *Lander,* Appellant's evidence established that Appellant had a strong parent/child relationship with the Child and was committed to continuing the relationship. Under these circumstances, it is not in the Child's best interest to apply the presumption of legitimacy at the cost of the Child's established relationship with her father. Accordingly, consistent with *Lander,* we reverse the trial court's order of dismissal of Appellant's paternity action and remand for further proceedings.

*Reversed and remanded.*

WARNER and LEVINE, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***